UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Ft. Lauderdale Division
Case No. 0:23-cv-60782

MORGAN M. SACCONE,
An Individual,

    Plaintiff(s),
vs.

CARSTRADA, INC.,
a Florida Corporation,
and WESTLAKE SERVICES,
LLC, d/b/a WESTLAKE
FINANCIAL SERVICES,
A Foreign corporation,

    Defendant(s).
_____/

## COMPLAINT FOR DAMAGES AND INCIDENTAL RELIEF

Plaintiff, MORGAN M. SACCONE, an individual (hereinafter the "**Plaintiff**"), hereby sues Defendant, CARSTRADA, INC., a Florida corporation, (hereinafter "**Dealer**" or "**Dealership**") and WESTLAKE SERVICES, LLC d/b/a WESTLAKE FINANCIAL SERVICES, a Foreign corporation (hereinafter "**Holder**" or "**Lender**"), and alleges:

### GENERAL ALLEGATIONS

### *Jurisdiction and Venue*

1. Venue is proper in Broward County as Dealer is a legal entity incorporated under the laws of Florida whose principal business location was or is

in Broward County, Florida, and as the vehicle sale upon which these claims are based occurred in Broward County, Florida.

### *Allegations as to Parties*

2. At all times material hereto, the Dealership was licensed by the State of Florida as a dealer conducting automobile sales in Broward County, Florida.

3. At all times material hereto, the Dealership was a "dealer" as said term is defined under 49 U.S.C. §32702(2) and Florida Statute §320.77(1)(a) and a "transferor" as said term is defined under 49 C.F.R. §590.3.

4. At all times material hereto, Plaintiff was *sui juris* and a resident of Palm Beach County, Florida. Plaintiff is a "transferee" as said term is defined under 49 C.F.R. §580.3.

5. Holder is a Foreign entity authorized to do business in Florida as a lender and a "sales finance company" as defined in Fla. Stat. § 520.02(19) and is a "holder" of a "retail installment contract" as defined in Fla. Stat. § 520.02(8).

### *Factual Allegations*
### *Purchase of Vehicle - an Undisclosed Total Loss*

6. On or about November 29, 2022, Plaintiff went to the Dealership to purview used automobiles with the intent of purchasing a vehicle for personal and household use.

7. At the aforementioned time, Plaintiff met with a salesperson whom she

considered at the time to be cordial and knowledgeable.

8.   In the course of her initial discussion with the salesperson, Plaintiff related that she needed reliable transportation for personal and household purposes and were in need of a reliable mode of transportation.

9.   Said salesperson directed the Plaintiff to consider a 2019 Honda HR-V, with a Vehicle Identification Number of 3CZRU5H77KM718777 (hereinafter the "**Vehicle**").

10.  Dealership's salesperson affirmatively represented that the Vehicle was in excellent mechanical condition and was free of any structural or sub skin damage.

11.  Unbeknownst to the Plaintiff, at the time of the purchase of the Vehicle, the Vehicle had previously been involved in a total-loss accident and purchased by an insurance carrier in the course of a total-loss settlement.

12.  Based on the representations and the non-disclosures of the Dealership, Plaintiff agreed to purchase the Vehicle. In furtherance of the purchase, Plaintiff executed and delivered to the Dealership a document entitled "Buyer's Order," which is known more commonly in the automobile sales industry as a "Retail Buyer's Order" (hereinafter the "**Vehicle Buyer's Order**").

13.  A true and correct copy of the Vehicle's Buyer Order is attached hereto and incorporated herein by reference as Exhibit "A".

14.  Subsequent to the execution of the Vehicle Buyer's Order, Plaintiff was

presented with and executed a document titled "Retail Installment Sale Contract Simple Finance Charge" ("**Vehicle RISC**").

15. A true and correct copy of the Vehicle RISC is attached hereto and incorporated herein by reference as Exhibit "B".

16. Pursuant to the Vehicle RISC, Plaintiff financed the sum of $14,957.44 of the purchase price of the Vehicle as more particularly set forth therein.

17. After Plaintiff completed the transaction to purchase and finance the Vehicle, Plaintiff brought the Vehicle home in the happy belief she acquired reliable transportation for family and household purposes.

### *Discovery of Evidence of Prior Wreck Damage and Latent Defects*

18. Following the purchase, Plaintiff began to notice that the Vehicle had anomalies within its drivetrain, trim and body that did not comport with the Dealer's representations that the Vehicle was in excellent condition and free of any prior accident damage.

19. Growing suspicious of the Dealership's representations, Plaintiff obtained a CarFax report and was able to discern for the first time that the Vehicle was involved in a total-loss accident in Texas.

20. A true and correct copy of a representative CarFax report for the Vehicle is attached hereto and incorporated herein by reference as Composite Exhibit "C."

### *Discovery of Dealership Deception Through*
### *Concealment of Title History*

21. As a part of the due diligence of Plaintiff in the preparation of the instant lawsuit, Plaintiff obtained the title history for the Vehicle from the Florida Department of Motor Vehicles (hereinafter the "**Vehicle Title History**").

22. A true and correct copy of the Vehicle Title History is attached hereto and incorporated herein by reference as Composite Exhibit "D."

23. Upon receipt of the Vehicle Title History in February of 2023, Plaintiff learned for the first time that the Vehicle was previously owned by Progressive Casualty Insurance Company prior to the Defendant's acquisition of the same.

24. Furthermore, upon querying the internet, Ms. Saccone for the first time discovered the true extent of the damage to the Vehicle by virtue of cached images from the auction sale of the Vehicle.



25. Had the Plaintiff been provided truthful and accurate disclosure by the Dealership that the Vehicle was involved in a total loss accident and was bought out by an insurance carrier in the course of a total-loss settlement, Plaintiff would not have agreed to purchase the Vehicle or paid considerably less for it.

26. As a result of the misrepresentations and omissions by the Dealership as further set forth herein, the Plaintiff has been damaged.

### *Finance Company Liability*

27. In compliance with the FTC Holder Rule, the Vehicle RISC at issue in the instant proceeding bears the following conspicuous language:

> NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

28. Florida Statue § 516.31(2), known more commonly as the "Florida Holder Rule," provides in pertinent part the following:

> (2) Restriction on Certain Negotiable Instruments and Installment Contracts - A holder or assignee of any negotiable instrument or installment contract, other than a currently dated check, which originated from the purchase concerning consumer goods or services is subject to all claims or defenses of the consumer debtor against the

seller of those consumer goods or services. A person's liability under this section may not exceed the amount owing to the person when that claim or defense is asserted against the person.

29. Accordingly, pursuant to Florida Holder Rule, Lender, as a holder or assignee of any negotiable instrument subject to the requirements of Florida Statutes Chapter 516, is subject to all claims and defenses of the consumer debtor against the seller of those consumer goods or services, to-wit, the Dealership.

30. Specifically, Plaintiff seeks restitution of all installment payments made in furtherance of the RISC, rescission of the transaction in full and damages up to and including the present balance of indebtedness under the RISC.

31. Plaintiff avers that her claim is so large that it exceeds the remainder of any debt owed to Lender under the RISC.

32. All conditions precedent to bringing this action have occurred, have been performed, or have been waived.

## COUNT I
## ACTION FOR VIOLATION OF THE FEDERAL ODOMETER ACT
(Dealership and Holder)

33. This is an action for violation of the Federal Odometer Act, 49 U.S.C. §32701, *et sequi* (hereinafter the "**Act**").

34. Plaintiff reaffirms and realleges the allegations contained in Paragraphs 1 through 33 above as if set forth hereat in full.

35. At all times material hereto, Plaintiff was a "transferee" as said term is

defined 49 C.F.R. §580.30.

36. At all times material, the Dealership was a "dealer" as said term is defined under 49 U.S.C. §32702(2) and a "transferor" as defined by 49 C.F.R. §580.30.

37. At all times material hereto, the Vehicle was a "motor vehicle" as said term is defined under 49 U.S.C. §32101(7).

38. Dealership failed to provide Plaintiff with the actual title certificate for the Vehicle, for her examination and signature, as required by 49 U.S.C. §32705 and 49 C.F.R. §580.5.

39. Dealership intentionally withheld the title certificate from inspection in order to conceal from Plaintiff the facts related to the prior ownership of the Vehicle, including the fact that the Vehicle was previously involved in a total-loss accident.

40. Instead of complying with the requirements of the Act, the Dealership required Plaintiff to sign a motor vehicle dealer title reassignment supplement, and an application for certificate of title (hereinafter referred to collectively as the "**Transfer Forms**") which prevented the Plaintiff from discovering material facts about the Vehicle's prior ownership history. *See* Exhibit D.

41. Through the above-described scheme and artifice, the Dealership was able to bypass the requirements of the Act to intentionally conceal the prior history of the Vehicle with fraudulent intent.

42. The Dealership designed and employed this tactic of requesting Plaintiff to sign the Transfer Forms with the specific intent of perpetuating fraud and deception on Plaintiff.

43. The Dealership intentionally manipulated title procedures both to mislead Plaintiff and to serve its own ends, to-wit: the sale of a total loss car for vastly more than it was worth.

44. As an experienced motor vehicle dealer, the Dealership knew or should have known of the Act along with the regulatory requirements regarding disclosures and deliberately and recklessly disregarded what the law required.

45. The Dealership deliberately deceived Plaintiff through the oral and written misrepresentations and non-disclosures referred to above.

46. The Dealership violated the Act with the specific intent to defraud.

47. As a direct and proximate result of the violations of the Act, the Dealership is liable to Plaintiff in the sum of three times her actual damages or $10,000.00, whichever is greater.

48. Plaintiff has retained the undersigned counsel to represent her interest herein and are obligated to pay said counsel a reasonable fee for its services.

49. Pursuant to 49 U.S.C. §32710(b), Plaintiff is entitled to recover her reasonable attorney's fees and court costs upon entry of judgment in her favor.

**WHEREFORE**, Plaintiff, MORGAN SACCONE, an individual, demands judgment against Defendants, CARSTRADA, INC., a Florida Corporation, and WESTLAKE SERVICES, LLC, d/b/a WESTLAKE FINANCIAL SERVICES, a Foreign corporation, and each of them, jointly and severally, for statutory and actual damages, together with attorney's fees and costs pursuant to 49 U.S.C. §32710.

## COUNT II
## ACTION FOR FRAUD
### (Dealership and Holder)

50. This is an action for a claim for damages for common law fraud brought pursuant to the pendant jurisdiction of the Court.

51. Plaintiff realleges and reaffirms the allegations contained in Paragraphs 1 through 33 above as if set forth hereat in full.

52. As more particularly described above, the Dealership misrepresented and omitted material facts concerning the transaction to purchase and finance the Vehicle.

53. At the time of the sale of the Vehicle to the Plaintiff, the Dealership, by and through it's agents and employees, omitted material facts by failing to disclose that the Vehicle had been involved in a total-loss accident.

54. The Dealership had actual or constructive knowledge that the Vehicle had been previously involved in a total-loss accident.

55. The Dealership knew that the representations above were false, or made

such representations recklessly, when the Dealership had no reasonable grounds for believing those representations were true.

56. The Dealership knew that the omissions concerning the Vehicle's prior wreck history were material and important.

57. The Dealership intended to deceive Plaintiff and Plaintiff relied upon the misrepresentations and omissions to her detriment.

58. As a direct and proximate result of the fraud and non-disclosures by the Dealership, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff, MORGAN SACCONE, an individual, demands judgment for damages against Defendants, CARSTRADA, INC., a Florida Corporation, and WESTLAKE SERVICES, LLC, d/b/a WESTLAKE FINANCIAL SERVICES, a Foreign corporation, and each of them, jointly and severally, together with interest and costs.

### COUNT III
### ACTION FOR NEGLIGENT MISREPRESENTATION
**(Dealership and Holder)**

59. This is an action for negligent misrepresentation brough pursuant to the pendant jurisdiction of the Court.

60. Plaintiff realleges and reaffirms the allegations contained in Paragraphs 1 through 33 above as if set forth hereat in full.

61. As more particularly described above, the Dealership misrepresented

and failed to disclose material facts concerning the condition and history of the Vehicle which were false.

62. The Dealership believed the above statements to be true but which were in fact false.

63. The Dealership was negligent in making the statements concerning the transaction to purchase and finance the Vehicle and that the Dealership should have known the statements were false.

64. The Dealership, in making the statements concerning the purchase and sale transaction for the respective vehicles, intended that Plaintiff rely upon said statements.

65. Plaintiff justifiably relied on the false statements concerning the condition of the Vehicle at the time of her purchase of the Vehicle.

66. As a direct and proximate result of the negligent misrepresentation by the Dealership, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff, MORGAN SACCONE, an individual, demands judgment for damages against Defendants, CARSTRADA, INC., a Florida Corporation, and WESTLAKE SERVICES, LLC, d/b/a WESTLAKE FINANCIAL SERVICES, a Foreign corporation, and each of them, jointly and severally, together with interest and costs.

## *DEMAND FOR JURY TRIAL*

Plaintiff, MORGAN M. SACCONE, an individual, demands a trial by jury of all issues so triable.

        Respectfully Submitted,

        <u>/s/ Joshua Feygin</u>
        **Joshua Feygin, Esq.**
        FLORIDA BAR NO: 124685
        Email:  Josh@Sueyourdealer.com
        **SUE YOUR DEALER – A LAW FIRM**
        1930 Harrison Street Suite 208 F
        Hollywood, FL 33020
        Telephone: (954) 228-5674
        Facsimile: (954) 697-0357
        *Counsel for the Plaintiff*