**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Ft. Lauderdale Division**
**Case No. 0:23-cv-60782-AHS**

MORGAN M. SACCONE,
An Individual,

      Plaintiff(s),

vs.

CARSTRADA, INC.,
a Florida Corporation,
and WESTLAKE SERVICES, LLC,
d/b/a WESTLAKE FINANCIAL
SERVICES,
A Foreign corporation,

      Defendant(s).

_____/

**ATTORNEY JOSHUA FEYGIN AND SUE YOUR DEALER - A LAW FIRMS'**
**RESPONSE TO THE COURT'S SHOW CAUSE ORDER**

## INTRODUCTION

At first blush, the undersigned would agree with the Court that the circumstances surrounding the Plaintiff's Motion for Default Final Judgment could warrant sanctions arising under Fed. R. Civ. Pro. 11. However, as with all things in life, there are two sides to every story.

Upon review of the Defendant's *pro-se* Motion for Extension of Time [DE 54] and the attachments appended thereto, the Defendant paints what could be seen as a troubling tale. Yet, as the below discussion will show, that portrayal could not be any further from the truth. Giving the Defendant the benefit of the doubt, it appears as if the Defendant conflates and confuses funds tendered by its surety bond, pre-suit, in settlement of Plaintiff's Florida's Deceptive and Unfair Trade Practices Act ("**FDUTPA**") claim, as full and final satisfaction of the  Plaintiff's statutory claims asserted herein. This was in spite of more than one correspondence delivered to the Defendant and Defendant's former counsel, Roger Barry Davis ("**Attorney Davis**"), advising that the payment of the Plaintiff's FDUTPA damages would not and did not resolve the Plaintiff's claims under the Federal Odometer Act, 49 U.S.C. §32701, *et sequi* ("**Odometer Act**").

To unpack this "mess," as so aptly described by the Court, will necessarily require a detailed analysis of the circumstances leading up to the filing of this lawsuit and, unfortunately, matters that would normally fall well outside the Court's concern. As will be seen below, neither the conduct of the undersigned rise to the level of sanctionable conduct when analyzed with all of the relevant facts before to the Court.

## BACKGROUND

As the Court is aware, this action arises from the Defendant's sale of an undisclosed total-loss vehicle to the Plaintiff without any semblance of compliance with the Odometer Act. Specifically, the Defendant violated the Odometer Act when it withheld the Vehicle's certificate of title with intent to defraud through concealment. [DE 51].

Prior to initiating the instant action, Ms. Saccone, through undersigned counsel, dispatched and delivered to the Defendant a comprehensive demand package outlining the multiple claims Ms. Saccone intended to pursue as a result of the aforementioned conduct. *See* Composite Exhibit "A." Among the demands were (1) a pre-suit demand made pursuant to Fla. Stat. §501.98 ("**FDUTPA Demand**"); (2) a Notice of Revocation of Acceptance; (3) a demand for violation of the Odometer Act; and, (4) a Demand for Insurance Disclosure.[1] Feygin Dec., ¶3. As for the FDUTPA demand, Ms. Saccone explicated that the basis of her claim was founded upon the Defendant's concealment of the title to prevent her from learning of the fact that the vehicle was the subject of a total-loss insurance claim. *See* Ex. A, pg. 3. In addition, she sought payment of $8,240 as and for her good faith determination of her actual damages arising under FDUTPA and payment of the $500 statutory surcharge under Fla. Stat. §501.98(4)(a). *Id*, pg. 4. The demand further provided that the amounts demanded were intended to resolve Ms. Saccone's claims against the "Dealership and its employees, sureties, agents, and insurers from liability for damages **under Ch. 501, Florida Statutes**."[2] *Id*. (Emphasis supplied). Separately, Ms. Saccone demanded, *inter-alia*, payment of $10,000 as and for her statutory damages arising under the Odometer Act in an attempt to compromise and avoid litigation. *Id*., pg, 33.

In response to the demand package, on March 13, 2023 the Defendant, through its owner, Mr. Val Sigal ("**Mr. Sigal**"), contacted the undersigned via e-mail correspondence and offered to repurchase the subject vehicle from Ms. Saccone and return her down-payment. *See* Composite Exhibit "B"; Feygin Dec., ¶5. However, the Defendant refused to tender any amounts as and for any other claims. *Id*.

---

[1] Although the FDUTPA Demand was dated March 02, 2023 and the remainder of the demands were dated February 27, 2023, all of the demands were sent in the same USPS Priority Mail envelope on March 02, 2023. Feygin Dec., ¶4.

[2] FDUTPA

Having received and reviewed the offer, the Plaintiff rejected the same as she believed it to be inadequate and issued a counter-offer on March 27, 2023. Saccone Dec., ¶¶ 6-7; Feygin Dec., ¶6; Composite Exhibit "C". Within the email conveying the settlement proposal, Defendant was advised that it would still be subject to liability as to the remainder of Ms. Saccone's claims if it only resolved the FDUTPA Demand. *Id*. Feygin Dec., ¶7. In turn, on March 29, 2023, Defendant requested clarification regarding the monetary demand of Ms. Saccone for her claim arising under the Odometer Act. *See* Exhibit "D"; Feygin Dec., ¶8.  In response, the undersigned informed the Defendant of the legal basis upon which the Odometer Act violation was premised and provided the Defendant with a copy of the 11th Circuit's decision in *Owens v. Samkle Automotive Inc.,* 425 F.3d 1318 (11th Cir. 2005). *Id.* Thereafter, radio silence followed from the Defendant. Feygin Dec., ¶9.

Concurrently with the communications with the Defendant, Ms. Saccone initiated a claim against the dealership's surety bond on March 17, 2023. Feygin Dec., ¶10. In support of her claim, Ms. Saccone furnished the surety bond with an executed claim form and a copy of the FDUTPA demand delivered to the dealership. Feygin Dec., ¶11; Saccone Dec., ¶9; Exhibit "E." The bond claim form directed the surety bond to refer to the FDUTPA Demand to discern the factual basis of the claim and the damages sought from the bond for the Defendant's FDUTPA violation. *Id*.

As the Defendant failed to resolve Ms. Saccone's claim, on April 24, 2023, the surety bond presented a settlement agreement for Ms. Saccone's execution in exchange for payment of the amount of $8,240.00; the exact amount of damages sought by Ms. Saccone in resolution of her FDUTPA claim.[3] Feygin Dec., ¶12; Saccone Dec., ¶10; Exhibit "F." Ms. Saccone executed

---

[3] The bond company did not tender the $500 statutory surcharge nor any amounts for attorney's fees and costs sought by Ms. Saccone. Feygin Dec., ¶14.

the release and ultimately received a check from the surety bond company in the amount of $8,240.00. Feygin Dec., ¶13; Saccone Declaration, ¶10. The Defendant was not a party to this settlement. Exhibit F ("This is not a release of Carstrada."). The settlement with the Surety Bond was not intended to nor was it believed to be a resolution of the remainder of Ms. Saccone's claims. Saccone Declaration, ¶¶11-12.

Having heard nothing from the Defendant relative to a resolution of her remaining claims, on April 27, 2023, Ms. Saccone filed suit against the Defendant asserting the following causes of action: (1) Violation of the Federal Odometer Act; (2) Fraud; and, (3) Negligent Misrepresentation. [DE 1]. Ms. Saccone did not pursue her FDUTPA claim against the Defendant in the lawsuit. *Id.*

Defendant evaded service but was ultimately served by substitute service upon the Secretary of State. [DE 20]. Having failed to defend its interests in the case, Ms. Saccone properly moved for a clerk's default [DE 21] which was entered by the Clerk on July 28, 2023. On December 12, 2023, Ms. Saccone and Defendant Westlake Financial Services, Inc. fashioned a mutually agreeable settlement within the confines of the statutory limitations of the F.T.C. Holder Rule. [DE 36].[4] As with the settlement with the surety bond, the Defendant was not a party to this settlement either. Notably, at no point in time throughout the pendency of this lawsuit did the Defendant resolve any of Ms. Saccone's claims with her.

Days prior to the Court's deadline to file Plaintiff's Motion for Default Final Judgment, on February 23, 2024, Attorney Davis communicated with the undersigned and informed him of his recent retention by the Defendant to defend its interests in this action. Feygin Dec., ¶19; Exhibit "G." Attorney Davis requested that Ms. Saccone abstain from filing the Motion for

---

[4] The Court is in possession of the same by virtue of the Plaintiff's Motion to Enforce Settlement. [DE 44].

Default Judgment to allow him to become apprised with the matter. *Id*. Given the Court's deadline, Ms. Saccone could not indulge Attorney Davis' request and timely submitted her Motion for Default Judgment on February 26, 2024. [DE 50].

After further discussion with Attorney Davis, on February 26, 2024, the undersigned provided Attorney Davis with a summary of the action as a professional courtesy to aide in his evaluation of the litigation, in the hopes of ushering a swift resolution. *See* Composite Exhibit "H"; Feygin Dec., ¶20. Included in the correspondence was an offer of compromise to resolve the balance of the Plaintiff's damages that were not previously satisfied. *Id*. Within this correspondence Ms. Saccone once more informed the Defendant that she was pursuing her claims for damages under the Odometer Act which were not resolved by virtue of either the pre-suit settlement of her FDUTPA damages nor the settlement with Westlake. *Id*; Feygin Dec., ¶21.

Ultimately, settlement efforts by and among the undersigned and Attorney Davis proved to be futile; Attorney Davis did nothing to further settlement discussions. Instead, he engaged in what can be best described as inflammatory rhetoric filled rants over phone calls directed at the undersigned, drew bizarre parallels to President Trump and accused the undersigned of operating a RICO enterprise. Feygin Dec., ¶22. At times, Attorney Davis implied sanctions would be brought against the undersigned based on the legally and factually flawed premise that the surety bond's pre-suit tender along with Ms. Saccone's partial settlement with Westlake Financial Services resolved all of Ms. Saccone's claims. Feygin Dec., ¶23. In addition to these tirades, Attorney Davis implored the undersigned to intervene in an unrelated pending foreclosure action [5] filed against him by a condominium association that the undersigned's mother-in-law is the acting treasurer of the same. Feygin Dec., ¶ 24.

---

[5] *See*: *Captain's Paradise Condominium vs. Roger Davis, et al.,* Case No. CACE24004632, 17th Judicial Circuit in and for Broward County.

After some time had passed, it came to the undersigned's attention that Attorney Davis was suspended by the Florida Bar pending the outcome of grievance proceedings for allegedly pilfering his clients' funds. [6]

Realizing that Attorney Davis could no longer represent the Defendant and that a resolution would not be forthcoming, the undersigned prepared and timely filed his Motion for Attorney's Fees on May 6, 2024 [DE 53] and a copy was served via U.S. mail upon the Defendant. Presumably after receiving service of the Motion, the Defendant realized the peril it was in and hastily filed a *pro-se* Motion for Extension of Time [DE 54] within which the Defendant provided a less than accurate summation of the circumstances. Specifically, Defendant, through Mr. Sigal, represented to the Court that the tender of $8,240 resolved Ms. Saccone's claims, attached the Notice of Revocation in support of its position and omitted the balance of the demands issued to the Defendant. *Id*. In addition to the omission of the additional demands, Defendant likewise gave no consideration to the numerous communications by which it was put on notice of the scope of damages sought by Ms. Saccone under the legal theories available to her. *Id*. Of note, the position asserted by the Defenant through its Motion for Extension of Time mirrored the same legal theories Attorney Davis conveyed as the basis for threatened sanctions against the undersigned. *See* Feygin Dec., ¶23.

More recently, Attorney Davis resurfaced on Saturday, May 25th, 2024 by way of a harassing voicemail delivered to the undersigned's mother-in-law wherein Attorney Davis implied that the Court's Show Cause Order was a direct product of "*what happens when you jerk me off*." [7] The only reasonable way this statement can be interpreted is that Attorney Davis provided legal

---

[6] *See*: *The Florida Bar v. Roger Barry Davis*,. Case No. SC2024-0501.
[7] A transcription of the voicemail is attached  as Exhibit A to the Declaration of Reva Roiter and the original recording will be made available for the Court's review, *in camera,* should the Court so desire.

advice to the Defendant to craft the Motion for Extension of Time with the express intent to trigger this Court's response.

When viewed objectively, it appears as if Attorney Davis' sole motivation for becoming involved in this action was to thwart the progress of this case and leverage the ambit of sanctions upon the undersigned to gain an advantage in his own foreclosure action.[8] This conduct, which was projected through the Defendant, has derailed the regular and orderly progress of this Court. Moreover, it has needlessly impugned the reputation of the undersigned, all in an attempt to exact leverage for Attorney Davis' own personal reasons in matters that would otherwise not concern this Honorable Court. And although the undersigned is cognizant that Attorney Davis' involvement and conduct in this action are not central to the issues raised by the Court's Show Cause Order, the undersigned believes the same to be relevant and material for the Court to understand the backdrop by which this "mess" has come to be.

For the reasons set forth below, this Court should discharge the Show Cause Order directed at the undersigned as no sanctionable conduct is present.

## LEGAL MEMORANDUM

i.      **Relevant Law**

   a.  **Florida's Deceptive and Unfair Trade Practices Act**

Florida's Deceptive and Unfair Trade Practices Act Fla. Stat. 501.201, *et. seq* prohibits unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce. *PNR, Inc. v. Beacon Property Management, Inc*. 2003, Fla., 842 So. 2d 773. A violation of "[a]ny law, statute, rule, regulation, or ordinance

---

[8] Attorney Davis did not even make an appearance in this case. At all times material hereto, Attorney Davis' status with the Federal District Court of the Southern District of Florida was listed as "inactive" for failure to pay dues.

which proscribes . . . unfair, deceptive, or unconscionable acts or practices" is a per se violation of FDUTPA." Fla. Stat. § 501.203(3)(c); *Webber v. Bactes Imaging Sols., Inc*., 295 So. 3d 841, 844 (Fla. Dist. Ct. App. 2020).   An offender can also violate FDUTPA by engaging in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Webber* 295 So. 3d at 844; " Fla. Stat. § 501.204(1).

Pursuant to Fla. Stat. §319.14(1)(a), "[a] person may not knowingly offer for sale, sell, or exchange any vehicle that has been licensed, registered, or used as a […] short-term-lease vehicle […] until the [DHSMV] has stamped in a conspicuous place on the certificate of title of the vehicle, or its duplicate, words stating the nature of the previous use of the vehicle[.]" Furthermore, Fla. Stat. §319.14(2) mandates written disclosure of the prior-use history in the event a vehicle was previously used as a short-term lease vehicle. Fla. Stat. §319.225(4) mandates that odometer disclosures be made on the certificate of title. The violation of Chapter 319, Fla. Stats, is a per-se violation of FDUTPA pursuant to Fla. Stat. § 501.203(3)(c).

As a consumer protection statute, FDUTPA is to be construed liberally to give effect to its remedial purpose to protect consumers. *Jones v. Santander Consumer USA Inc*., No. 16-14012-CIV-ROSENBERG/LYNCH, 2016 U.S. Dist. LEXIS 198200, at *15 (S.D. Fla. Aug. 1, 2016). Underscoring the broad remedial nature of the Act,  "FDUTPA is a separate cause of action intended to be an additional remedy, *see* Fla. Stat. § 501.213(1), and it is aimed toward making consumers whole for losses caused by fraudulent consumer practices*." JDI Holdings, LLC v. Jet Mgmt*., 732 F. Supp. 2d 1205, 1234 (N.D. Fla. 2010).

Remedies available to consumers under FDUTPA include actual damages, attorney's fees, and court costs. Fla. Stat. § 501.211(2); *Delgado v. J.W. Courtesy Pontiac* 1997, Fla. Dist. Ct. App., 693 So. 2d 602. "Actual damages" have been uniformly defined by the courts as "'the

difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.'" *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984); *see also Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451, 454 (Fla. 1st DCA 1985). This is because "[t]he act is intended to protect a consumer from unfair or deceptive acts or practices which diminish the value or worth of the goods or services purchased by the consumer." *Urling*, 468 So. 2d at 454. Down-payments are considered consequential damages and not properly recoverable as actual damages. *Maroone Chevrolet, LLC v. Alvarado*, 344 So. 3d 459, 463 (Fla. Dist. Ct. App. 2022); *Rodriguez v. Recovery Performance & Marine, LLC*, 38 So. 3d 178, 181 (Fla. Dist. Ct. App. 2010).

Prior to initiating a lawsuit against a car dealership, a consumer is obligated to send a pre-suit demand letter. Fla. Stat. §501.98(1) provides in relevant part:

> "As a condition precedent to initiating any civil litigation, including arbitration, arising under this chapter against a motor vehicle dealer, which may also include its employees, agents, principals, sureties, and insurers, a claimant must give the dealer a written demand letter at least 30 days before initiating the litigation."

Fla. Stat. §501.98(2) goes on to provide:

> The demand letter, which must be completed in good faith, must:
>
> (a)    State the name, address, and telephone number of the claimant.
>
> (b)    State the name and address of the dealer.
>
> (c)    Describe the underlying facts of the claim, including a statement describing each item for which actual damages are claimed.
>
> (d)    State the amount of damages, or, if not available, the claimant's best estimate of the amount of damages.
>
> (e)    To the extent available to the claimant, be accompanied by all transaction or other documents upon which the claim is based.
>
> In the event that the dealership tenders the damages sought in the demand, along with a

statutory surcharge, a consumer may not initiate civil litigation, including arbitration, against a dealer. Fla. Stat. §501.98(4)(a). As the statute makes plain, the payment of the damages claimed in the demand plus the statutory surcharge within 30 days after receipt of the demand letter "**does not** serve as a release as to items of damages that are not recoverable under this chapter." Fla. Stat. §501.98(5)(c). (Emphasis supplied).

### b.  Federal Odometer Act

Congress passed the Odometer Act to prevent fraud in the sale of motor vehicles. The Congressional intent in passing the Act was to prevent odometer tampering and to provide other general safeguards for the protection of consumers. 49 U.S.C. §32701(b). In the Eleventh Circuit, a transferor who conceals the certificate of title from examination in order to conceal facts germane to the vehicle's history violates the Act with intent to defraud. *Owens v. Samkle Automotive Inc*., 425 F.3d 1318 (11th Cir. 2005)

The Odometer Act states that: "A person that violates this chapter or a regulation prescribed or order issued under this chapter, with intent to defraud, is liable for 3 times the actual damages or $10,000, whichever is greater." 49 U.S.C. § 32710(a). If treble damages exceed $10,000, then the award of treble damages is mandatory, not permissive. *See Kostel Funeral Home v. Duke Tufty Co*., 393 N.W.2d 449 (S.D. 1986).

As a remedial consumer protection statute, the Odometer Act is broadly and vigorously applied to accomplish the Act's purposes. *Ryan v. Edwards*, 592 F.2d 756, 759-60 (4th Cir. 1979); *Hughes v. Fox*, 814 F.2d 498, 501 (8th Cir. 1987); *Sarratore v. Longview Vehicle Corp*., 666 F. Supp 1257 (N.D. In. 1987); *Stier v. Park Pontiac*, 391 F. Supp 397 (S.D. W.Va. 1975). Broadly construing the Act promotes an important public policy. By contrast to the remedial nature of FDUTPA which protects a consumer from unfair or deceptive acts or practices which diminish

the value or worth of the goods or services purchased, Congress mandated accurate odometer statements and other pertinent information concerning motor vehicles to penalize those that engage in odometer tampering and related wrongdoing. *Nigh v. Koons Buick Pontiac GMC, Inc*., 143 F. Supp. 2d 563, 566 (E.D. Va. 2001)("The statute creates a private right of action for private persons to penalize violations of the [Act]." "Congress provided a private civil remedy to punish violators of the Odometer Act, so that it would be 'largely self-enforcing.'" *Owens v*, 425 F.3d at 1325 *quoting* H.R. Rep. No. 92-1033, at 20 (1972) (committee report for the Motor Vehicle Information and Cost Savings Act of 1972, precursor to the present-day Odometer Act).

Although the Eleventh Circuit has not spoken on what constitutes "actual damages" under the Act, other Circuits have found actual damages under § 32710(a) as "(1) the purchase price of the vehicle less its [fair market value] given the vehicle's actual mileage, and (2) any expenses shown to be attributable to the defendant's wrongful acts[.]" *Farmers Co-op Co. v. Senske & Son Transfer Co*., 572 F.3d 492, 498 (8th Cir. 2009) (*citing Duval v. Midwest Auto City, Inc*., 425 F. Supp. 1381, 1388 (D. Neb. 1977)). To that end, in entering judgment, this Court agreed with Ms. Saccone that her "actual damages" consisted of her $8,000 downpayment. [DE 51].

Notably, the Odometer Act does not preempt other claims for odometer related abuses under state statutes and common law. 118 Cong. Rec. 18218, 18219 (May 22, 1972); *State ex rel. McLeod v. Fritz Waidner Sports Cars, Inc.,* 274 S.C. 332, 263 S.E.2d 384 (1980) (Finding the Federal Act does not preempt state deceptive trade practices act); *Edgar v. Fred Jones Lincoln-Mercury*, 524 F. (2d) 162 (10th Cir.1975). Indeed, Odometer Act violations are often times brought concurrently with related state-law claims. *See: Tuckish v. Pompano Motor Company* 2004, S.D. Fla., 337 F. Supp. 2d 1313; *Tirtel v. Sunset Auto & Truck, LLC*, Case No: 2:18-cv-481-FtM-99MRM (M.D. Fla. Jan. 14, 2019); *State ex rel. Celebrezze v. Hughes*, 569 N.E.2d 1059

(Ohio 1991); *Caldwell v. Jenkins*, 856 S.W.2d 37 (Ark. Ct. App. 1993).

### c. Rule 11

"A court may impose sanctions for litigation misconduct under its inherent power." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc*., 561 F.3d 1298, 1306 (11th Cir. 2009). The inherent power is "vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc*., 501 U.S. 32, 43 (1991) (quotations omitted). However, this power "must be exercised with restraint and discretion." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980). Ultimately, "Rule 11 sanctions are designed to discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses." *Didie v. Howes*, 988 F.2d 1097, 1104 (11th Cir. 1993).

Rule 11 sanctions are appropriate (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory with no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith and for an improper purpose." *Briggs v. Briggs*, 245 Fed. Appx. 934, 936 (11th Cir. 2007) (*citing Massengale v. Ray*, 267 F.3d 1298, 1301 (11th Cir. 2001))

If a district court imposes sanctions, a finding of bad faith is first required. *See Wilson v. Citigroup, N.A*., 702 F.3d 720, 724 (2d Cir. 2012) ("Our case law is clear that a district court may not impose attorney's fees as a sanction without first making an explicit finding that the sanctioned party … acted in bad faith in engaging in the sanctionable conduct."). In the absence of direct evidence of subjective bad faith, this benchmark can only be satisfied, "if an attorney's conduct is so egregious that it [must have been] committed in bad faith." *Purchasing Power, LLC v. Bluestem Brands, Inc*., 851 F.3d 1218, 1224-25 (11th Cir. 2017).

Whether to impose sanctions is determined by the reasonableness of inquiry into the law

and facts, not the good or bad faith of the signatory. *G.C. & K.B. Investments v. Wilson*, 326 F3d 1096, 1109 (9th Cir 2003); *Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F2d 928, 932 (7th Cir 1989) ("[A] paper filed in the best of faith, by a lawyer convinced of the justice of his client's cause, is sanctionable if counsel neglected to make 'reasonable inquiry' beforehand.").

Rule 11(b)(2) and (b)(3) go to whether a claim is legally or factually frivolous. *See Thompson v. Relation Serve Media, Inc.*, 610 F.3d 628, 664 (11th Cir. 2010). In the Eleventh Circuit, a Rule 11 challenge as to frivolity requires a two-prong inquiry – "whether the legal claims or factual contentions are objectively frivolous, and, if so, whether a reasonably competent attorney should have known they were frivolous." *Thompson*, 610 F.3d at 665.

### ii.    Analysis

As is evident from the above summation, the claims brought in this action were well founded both in fact and in law and not asserted in bad faith. Following the issuance of the FDUTPA Demand, a partial resolution was achieved by and through the surety bond's tender of the amounts sought in the demand. Thereafter, and before the filing of the Complaint, the undersigned completed a reasonable investigation into the facts and law. Feygin Dec., ¶¶15-16. As a result of his investigation, the undersigned formed a good-faith belief that the damages tendered by the surety bond in settlement of Ms. Saccone's FDUTPA claim did not resolve her statutory claims under the Odometer Act nor her pendent state-law claims based upon the legal principles outlined hereinabove. Feygin Dec., ¶17. Despite not having received the statutory surcharge sought in the FDUTPA Demand, Ms. Saccone opted not to pursue the claim in light of the surety bond's tender of $8,240. Instead, she filed suit for violation of the Odometer Act, Fraud and Negligent Misrepresentation. [DE 1].

As the matter progressed and application was made for a default final judgment, the

undersigned conducted a reasonable investigation into the scope of damages available to Ms. Saccone. Feygin Dec., ¶¶26-28. Following the undersigned's investigation, an opinion was formed that Ms. Saccone's remaining actual damages consisted of her down-payment of $8,000 which had not theretofore been resolved. Feygin Dec., ¶29; Saccone Dec., ¶¶ 12, 14-15. In preparing the Motion for Default Final Judgment, the undersigned failed to disclose the amounts tended towards the pre-suit settlement of the unpled FDUTPA claims. This omission was in no way meant to mislead or conceal any facts from the Court. Rather, this omission was grounded in the undersigned's good-faith belief that the surety bond's pre-suit settlement of unpled claims had no bearing on the remaining damages available to Ms. Saccone by virtue of the plain language of Fla. Stats. §501.98(5)(c) & §501.213(1). Feygin Dec., ¶31. This belief was only furthered by the undersigned's understanding that the spirit and intent of the Odometer Act is to penalize those who violate the Odometer Act with the intent to defraud and such damages are concomitant to any other damages available to an aggrieved consumer. Feygin Dec., ¶32.

As has been demonstrated, the undersigned's reasonable investigation lends itself to a finding of a lack of bad faith. The submission of the Motion for Default Final Judgment was founded upon a sound legal theory and not for an improper purpose. To impose sanctions in this instance would not advance the purpose of discouraging dilatory or abusive tactics. Instead, it would send a chilling effect on the plaintiff's bar by discouraging zealous advocacy to vindicate an aggrieved consumer's rights under complimentary causes of action.

To the extent that the Court finds that the damages recovered by virtue of the pre-suit settlement of the unpled FDUTPA claim were material to the calculation of the damages sought by Ms. Saccone, the undersigned would contend that the omission of the same from the Motion for Default Judgment was a good faith mistake of law and not a nefarious scheme to exact a

windfall that would warrant the imposition of sanction. Here, a reasonable inquiry was undertaken by the undersigned which revealed that the damages available to Ms. Saccone under her claims arising under FDUTPA were without regard to other remedies. In light of the sound legal principles discussed *supra*, a reasonable attorney in the same position would undoubtedly come to the same conclusion given the unambiguous language of Fla. Stats. §501.98(5)(c) & §501.213(1).

In the event that the Court finds that the surety bond's pre-suit tender of damages sought in connection with the unpled FDUTPA claim should have been included in the calculation of the monetary judgment, the undersigned would respectfully suggest that the final judgment be amended to reflect that Ms. Saccone is instead entitled mandatory minimum statutory damages of $10,000 under the Odometer Act.

### iii.    Conclusion

For the reasons stated hereinabove, the undersigned, Attorney Joshua Feygin, respectfully requests that this Court discharge the Show Cause Order and decline to impose sanctions given that, when the facts are circumstances are analyzed as a whole, the undersigned has not engaged in sanctionable conduct.

Dated: May 29, 2024

*/s/ Joshua E. Feygin*
**JOSHUA FEYGIN, ESQ.**
FL Bar No.: 124685
Email:  Josh@JFeyginesq.com
**SUE YOUR DEALER – A LAW FIRM**
1930 Harrison St, Suite 208F
Hollywood, FL 33020
Tel: (954) 228-5674
Fax: (954) 697-0357

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 29, 2024, I electronically filed the foregoing document with the Clerk of Court for the U.S. District Court, Southern District of Florida, using the CM/ECF system, and that the foregoing document was served electronically to all counsel of record and a copy was mailed by USPS first class mail to: CARSTRADA, INC. c/o its registered agent – SIGAL, LILYA 6023 HOLLYWOOD BLVD. HOLLYWOOD, FL 33024.

*/s/ Joshua E. Feygin*
JOSHUA FEYGIN, ESQ.
FL Bar No.: 124685