

✂ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

*Cut on dotted line.*

## Instructions

1. Each Click-N-Ship® label is unique.  Labels are to be used as printed and used only once.  DO NOT PHOTO COPY OR ALTER LABEL.

2. Place your label so it does not wrap around the edge of the package.

3. Adhere your label to the package.  A self-adhesive label is recommended.  If tape or glue is used, DO NOT TAPE OVER BARCODE.  Be sure all edges are secure.

4. To mail your package with PC Postage®, you may schedule a Package Pickup online, hand to your letter carrier, take to a Post Office™, or drop in a USPS collection box.

5. Mail your package on the "Ship Date" you selected when creating this label.

### Click-N-Ship® Label Record

**USPS TRACKING # :**
**9405 5036 9930 0492 2480 40**

| | |
|---|---|
| Trans. #: | 583716535 |
| Print Date: | 03/02/2023 |
| Ship Date: | 03/02/2023 |
| Expected Delivery Date: | 03/03/2023 |

Priority Mail® Postage:  $9.65
Total:  $9.65

**From:**   JOSHUA E FEYGIN
JOSHUA FEYGIN, PLLC
STE 208
1930 HARRISON ST
HOLLYWOOD FL 33020-7828

**To:**   CARSTRADA, INC.
6023 HOLLYWOOD BLVD
HOLLYWOOD FL 33024-7935

* Retail Pricing Priority Mail rates apply.  There is no fee for USPS Tracking® service on Priority Mail service with use of this electronic rate shipping label. Refunds for unused postage paid labels can be requested online 30 days from the print date.

**UNITED STATES POSTAL SERVICE®**   *Thank you for shipping with the United States Postal Service!*
*Check the status of your shipment on the USPS Tracking® page at usps.com*



P: 954.321.0507
F: 954.697.0357
W: www.sueyourdealer.com
E: josh@sueyourdealer.com

**CARSTRADA, INC.**
6023 Hollywood Boulevard
Hollywood, FL 33024
**VIA USPS PRIORITY MAIL: 9405503699300492248040**

March 2, 2023

Re:      Consumer:   **MORGAN M. SACCONE**
         Vehicle:    2019 Honda HR-V
         VIN:        3CZRU5H77KM718777

To Whom It May Concern:

Please be advised that this office represents MORGAN M. SACCONE (hereinafter the "Plaintiff") regarding claims against CARSTRADA, INC., located at the above listed address (hereinafter the "**Dealer**" or the "**Dealership**"), arising under Florida's Deceptive and Unfair Trade Practices Act ("**FDUTPA**") with respect to the purchase and financing of the above-listed vehicle ("**Vehicle**"). Please direct all future contacts and correspondence to this Firm **in writing**.

**HAVING BEEN FORMALLY NOTIFIED OF OUR REPRESENTATION, YOU ARE INSTRUCTED NOT TO CONTACT MY PLAINTIFF UNDER ANY CIRCUMSTANCES. DIRECT ALL INQUIRIES TO THIS OFFICE. IF YOU FAIL TO ACT IN CONFORMITY WITH THIS DIRECTIVE, INJUNCTIVE RELIEF WILL BE SOUGHT AGAINST YOU. ACCORDINGLY, YOU ARE HEREBY NOTIFIED OF OUR ATTORNEYS' LIEN.**

Pursuant to Florida Statute 501.98, my Plaintiff hereby notifies the Dealership of its violation of the Florida's Deceptive and Unfair Trade Practices Act in connection with the sale and financing of the subject vehicle.

The following deceptive acts and practices were committed by Dealership:

## **Facts**

On or about November 29, 2022 Plaintiff purchased the Vehicle from Dealer. *See* Retail Installment Sale Contract ("**RISC**") attached hereto as Exhibit "A". During the course of the negotiations for the Vehicle, Dealership, through its agents and employees, represented to the Plaintiff that the Vehicle was in excellent condition and free from any prior accident history. In reliance upon the Dealership's representations, Plaintiff



P: 954.321.0507
F: 954.697.0357
W: www.sueyourdealer.com
E: josh@sueyourdealer.com

consummated the transaction, paid all necessary down-payment amounts required under the RISC and otherwise complied with all relevant terms.

Following the purchase, Plaintiff began to notice that the Vehicle had anomalies within its drivetrain, trim and body that did not comport with the Dealer's representations that the Vehicle was in excellent condition and free of any prior accident damage. Growing suspicious of the Dealership's representations, Plaintiff obtained a CarFax report and was able to discern for the first time that the Vehicle was involved in a total-loss accident in Texas.

Pursuant to the undersigned's investigation in to the matter, it was determined that the dealership failed to obtain a Certificate of Title from the State of Florida and withheld the Texas Certificate of Title with the express intent to conceal the fact that the Vehicle was previously owned by Progressive Casualty Insurance Company. Had the Dealership provided the Texas Certificate of Title for the Plaintiff's inspection as required by Federal law, Plaintiff would have been able to discern the Vehicle was previously declared a total loss by virtue of Progressive's ownership of the Vehicle Dealer had express knowledge of the Vehicle's status as a total loss vehicle in light of the fact that the there exists a Texas State Certificate of Title with Progressive Casualty Insurance, Company listed as the initial owner of same. *See* Exhibit "B". As an experienced dealer in motor vehicles, Dealer had both express and implied knowledge of the Vehicle's status as a total loss vehicle. In addition, upon good information and belief, the Vehicle was announced as a total loss vehicle when it was sold to the Dealer at an auction.

At no point in time did Dealer present the Plaintiff with a copy of the title to inspect same. Instead, Dealer had the Plaintiff execute a title reassignment form and application for certificate of title in order to prevent the Plaintiff from ascertaining the true status of the Vehicle's prior use as a total loss vehicle. *See* Exhibit "C". In light of the above, it is readily apparent that the Dealer knowingly and intentionally concealed the Vehicle's title history causing the Plaintiff to suffer significant damages. Had the Plaintiff known the truth about the Vehicle's prior total loss history and inadequately repaired accident damage, she would have never agreed to purchase the Vehicle.

### Per-Se Violations of FDUTPA

Florida's Deceptive and Unfair Trade Practices Act, Section 501.203(3)(c), Florida Statutes, states in relevant part:

> "Violation of this part means any violation of this act or the rules adopted under this act and may be based upon any of the following …  Any law,



P: 954.321.0507
F: 954.697.0357
W: www.sueyourdealer.com
E: josh@sueyourdealer.com

statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices."

Dealer has violated the following:

a.     Fla. Stat. § 320.27(9)(b)(3) when it misrepresented or made false, deceptive, or misleading statements with regard to the sale and financing of the Vehicle.

b.     Fla. Stat. § 320.27(9)(b)(13) when it perpetrated the fraud upon my Plaintiff as described above.

### Good Faith Settlement Demand

Notwithstanding the foregoing, Plaintiff is willing to amicably resolve this matter and demands payment as set forth below:

a.     $8,240.00 representing Plaintiff's good faith estimate of actual damages;

b.     $500.00 representing the FDUTPA statutory surcharge; and,

c.     Reasonable attorney's fees of $2,208.00.

In exchange, Plaintiff will release Dealership and its employees, sureties, agents, and insurers from liability for damages under Ch. 501, Florida Statutes in connection with the above-described transaction. This offer of resolution is reasonable given your liability in this situation.

We will look forward to hearing from you regarding my Plaintiff's dispute. **Please respond within 30 days from receipt of this letter or else we will be force to proceed accordingly.**

Sincerely,

**Joshua Feygin, Esq.**
1930 Harrison Street Suite 208F
Hollywood, FL 33020
T. 954-228-5674
F. 954-697-0357
E. Josh@sueyourdealer.com
www.sueyourdealer.com

C/c:



P: 954.321.0507
F: 954.697.0357
W: www.sueyourdealer.com
E: josh@sueyourdealer.com

**MORGAN M. SACCONE**
131 S Federal Highway, Apt 621
Boca Raton, FL 33432
(Consumer/Claimant)

# EXHIBIT A

About:    Printing Requirements    Reset    (On Demand EOS™) Service.

**FL-103-ARB 10/10/2015**

# Retail Installment Contract and Security Agreement

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | Summary | |
|---|---|---|---|
| Carstrada, Inc<br>6023 Hollywood Blvd<br>Hollywood, FL 33024 | Morgan M Saccone<br>131 S Federal Hgwy Apt 621<br>Boca Raton, FL 33432 | No. | App# 77318363 - V# 2 |
| | | Date | 11/29/2022 |

Buyers' Month of Birth  **June**

☐ Business, commercial or agricultural purpose Contract.

**Documentary Stamp Tax.** Florida documentary stamp tax required by law in the amount of $ _____ 52.50 _____ has been paid or will be paid directly to the
Florida Department of Revenue. Certificate of Registration No. _____ .

## Truth-In-Lending Disclosure

| **Annual Percentage Rate**<br>The cost of your credit as a yearly rate. | **Finance Charge**<br>The dollar amount the credit will cost you. | **Amount Financed**<br>The amount of credit provided to you or on your behalf. | **Total of Payments**<br>The amount you will have paid when you have made all scheduled payments. | **Total Sale Price**<br>The total cost of your purchase on credit, including your down payment of $ |
|---|---|---|---|---|
| 8.99 % | $ ~~02.72~~ | $ | $ 194⬤ | $ 8000.00 |
| | | | | $ 27460.16 |

**Payment Schedule.** Your payment schedule:

| No. of Payments | Amount of Payments | When ⬤s are ⬤e |
|---|---|---|
| 72 | $ 270.28 | Monthly, B⬤⬤⬤ng 01⬤⬤/23 |
| | $ | |
| | $ | |

**Security.** You are giving us a security interest in the Property purchased.

**Late Charge.** If all or any portion of a payment is not paid within 10 days of its due date, you will be charged a late charge of 5% of the unpaid amount of the payment due.

**Prepayment.** If you pay off this Contract ⬤⬤⬤ have to pay a pen⬤⬤

**Contract Provisions.** You can see the ⬤⬤s of this Co⬤⬤⬤ for ⬤⬤ition⬤ informa⬤⬤ about nonp⬤⬤⬤ent, ⬤ef⬤⬤, any requir⬤ ⬤⬤payme⬤ ⬤⬤ore the scheduled date, and
prepayment refunds and penalties.

## Description of Property

| Year | Make | Model | | VIN | Odometer Mileage |
|---|---|---|---|---|---|
| 2019 | Honda | HR-V | | 3CZRU5H77KM718777 | 9712 |

☐ New
☒ Used        Other:
☐ Demo

## Description of Trade-In

2017 Hyundai Elantra GT KMHD35LH9HU372573

## Sales Agreement

**Payment.** You promise to pay us the principal amount of
$ 14957.44 _____ plus finance charges accruing on the unpaid
balance at the rate of _____ 8.99 % per year from the date of this Contract
until paid in full. You agree to pay this Contract according to the payment schedule and late
charge provisions shown in the *Truth-In-Lending Disclosure*. You also agree to pay any
additional amounts according to the terms and conditions of this Contract.

## Conditional Delivery

☐ **Conditional Delivery.** If checked, you agree that the following agreement regarding
securing financing ("*Agreement*") applies:
_____ . The Agreement is part of this Contract. The
Agreement will no longer control after the assignment is accepted. If there are any
conflicts between the terms of the Agreement and the Contract, the terms of this Contract
will apply.

**Down Payment.** You also agree to pay or apply to the Cash Price, on or before the date of
this Contract, any cash, rebate and net trade-in value described in the *Itemization of
Amount Financed*.

☐ You agree to make deferred down payments as set forth in your Payment Schedule.

Retail Installment Contract-FL Not for use in transactions secured by a dwelling.
Bankers Systems TM VMP®
Wolters Kluwer Financial Services © 2015

WLK-MVLFAZFL 11/9/2016

*WS*

Page 1 of 6

The original document is owned by Westlake Services, LLC d.b.a. Westlake Financial Services and is held by it, as Custodian,
on behalf of Wells Fargo Bank, National Association, as Agent and Secured Party. This copy was created on Nov 29, 2022 12:28:41 PM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOB®) Service.

☐ **Loan Processing Fee.** You agree to pay a loan processing fee of
$ ___N/A_____ that will be ☐ paid in cash.
☐ financed over the term of the Contract.

☒ **Pre-delivery Service Fee.** You agree to pay a pre-delivery service fee of
$ ___999.00_____ that will be ☐ paid in cash.
☐ financed over the term of the Contract. This charge represents costs and profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the sale.

☐ **Minimum Finance Charge.** You agree to pay a minimum finance charge of
$ ___N/A_____ if you pay this Contract in full before we have earned that much in finance charges.

## Itemization of Amount Financed

| | | | |
|---|---|---|---|
| a. | Price of Vehicle, etc. (incl. sales tax of $ 1055.94 ) | $ | 21655.94 |
| b. | Pre-delivery service fee | $ | 999.00 |
| c. | Cash Price (a+b) | $ | 22654.94 |
| d. | Trade-in allowance | $ | 4000.00 |
| e. | Less: Amount owing, paid to (includes m): | | N/A |
| f. | Net trade-in (d-e; if negative, enter $0 here and enter the amount on line m) | $ | |
| g. | Cash payment | $ | 4000.00 |
| h. | Manufacturer's rebate | $ | |
| i. | Deferred down payment | $ | |
| j. | Other down payment (describe) | $ | N/A |
| k. | Down Payment (f+g+h+i+j) | $ | 8000.00 |
| l. | Unpaid balance of Cash Price (c-k) | $ | 14654.94 |
| m. | Financed trade-in balance (see line f) | $ | N/A |
| n. | Paid to public officials, including filing fees | $ | 250.00 |
| o. | Insurance premiums paid to insurance company(ies) (See *Insurance Disclosures* section for coverage and benefits types.) | $ | |
| p. | Service Contract, paid to: | $ | |
| q. | To: Documentary Stamp Tax | $ | 52.50 |
| r. | To: _____ | $ | N/A |
| s. | To: _____ | $ | N/A |
| t. | To: _____ | $ | N/A |
| u. | To: _____ | $ | N/A |
| v. | To: _____ | $ | N/A |
| w. | To: _____ | $ | N/A |
| x. | To: _____ | $ | N/A |
| y. | To: _____ | $ | N/A |
| z. | To: _____ | $ | N/A |
| aa. | Total Other Charges/Amts Paid (m thru z) | $ | 302.50 |
| bb. | Prepaid Finance Charge | $ | N/A |
| cc. | Amount Financed (l+aa-bb) | $ | 14957.44 |

We may retain or receive a portion of any amounts paid to others.

## Insurance Disclosures

**Credit Insurance. Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below only the coverages you have chosen to purchase.**

**Credit Life**
☐ Single   ☐ Joint   ☒ None
Premium $ ___N/A_____   Term _____
Insured _____

**Credit Disability**
☐ Single   ☐ Joint   ☒ None
Premium $ ___N/A_____   Term _____
Insured _____

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

N/A
By: _____ DOB _____

N/A
By: _____ DOB _____

N/A
By: _____ DOB _____

**Property Insurance.** You must insure the Property. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. The collision coverage deductible may not exceed $ ___1000.00_____ . If you get insurance from or through us you will pay $ _____ for ___0 months___ of coverage.

| | | | | |
|---|---|---|---|---|
| ☐ | | $ N/A | Deductible Collision Cov. | $ N/A |
| ☐ | | $ N/A | Comprehensive | $ INCL. |
| ☐ | | Fire-Theft and Combined Additional Cov. | | $ N/A |
| | | | | $ N/A |

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED UNLESS CHECKED AND INDICATED.**

*[This area intentionally left blank.]*

Retail Installment Contract-FL Not for use in transactions secured by a dwelling.
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2015
WLK-MVLFAZFL 11/9/2016
Page 2 of 6

The original document is owned by Westlake Services, LLC d.b.a. Westlake Financial Services and is held by it, as Custodian, on behalf of Wells Fargo Bank, National Association, as Agent and Secured Party. This copy was created on Nov 29, 2022 12:28:41 PM.

Copy of the Electronic Original® document managed by the eCore® OnDemand (EOD™) Service.

☐ **Single-Interest Insurance.** You must purchase single-interest insurance. The coverage may be obtained from a company of your choice, reasonably acceptable to us. If you buy the coverage from or through us, you will pay

$ __N/A__ _____ for _____

of coverage. This insurance is solely for the interest of the Seller, its successors and assigns, and no protection exists for your benefit. You authorize us to purchase Single-Interest Insurance.

eSigned by:
*Morgan Saccone*
Nov 29, 2022 12:26:37 PM PST

By: Morgan M Saccone                          11/29/2022
                                             Date

By: _____                  _____
                                             Date

By: _____                  _____
                                             Date

### Additional Protections

You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary products will not be provided unless you sign and agree to pay the additional cost.

Your signature below means that you want the item(s) described above and have read and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

☐ **Service Contract**
Term _____
Price $ __N/A__
Coverage _____

☐ **Gap Waiver or Gap Coverage**
Term _____
Price $ __N/A__
Coverage _____

☐ _____
Term _____
Price $ _____
Coverage _____

eSigned by:
*Morgan Saccone*
Nov 29, 2022 12:26:37 PM PST

By: Morgan M Saccone                          11/29/2022
                                             Date

By: _____                  _____
                                             Date

By: _____                  _____
                                             Date

### Additional Terms of the Sales Agreement

**Definitions.** *"Contract"* refers to this Retail Installment Contract and Security Agreement. The pronouns *"you"* and *"your"* refer to each Buyer signing this Contract, and any guarantors, jointly and individually. The pronouns *"we"*, *"us"* and *"our"* refer to the Seller and any entity to which it may transfer this Contract. *"Vehicle"* means each motor vehicle described in the *Description of Property* section. *"Property"* means the Vehicle and all other property described in the *Description of Property* and *Additional Protections* sections.

**Purchase of Property.** You agree to purchase the Property from Seller, subject to the terms and conditions of this Contract. Seller will not make any repairs or additions to the Vehicle except as noted in the *Description of Property* section.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The *"Total Sale Price"* is the total price of the Property if you buy it over time.

**Deferment.** We may agree to defer the scheduled due date of all or any part of any installment payment, and will collect a $15.00 fee for such deferment. You must maintain the insurance on the Property required by this Contract during any deferment period. You may extend any optional insurance you bought with this Contract if the insurance company or your insurance contract allows the extension and if you pay the extension charge. In addition to the $15.00 deferment fee and the costs of extending required or optional insurance, you will also be required to pay additional finance charges as a result of exercising the deferment option.

**General Terms.** The Total Sale Price shown in the *Truth-In-Lending Disclosure* assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law. If we apply a finance charge that exceeds the maximum amount, we will first apply the excess amount to reduce the principal balance and, when the principal has been paid in full, any remaining amount to you.

You understand and agree that payments to third parties as a part of this Contract may include money retained by or paid back to us as commissions or other remuneration.

You agree that the Property will not be used as a dwelling.

**Prepayment.** You may prepay this Contract in full or in part at any time. We may impose an acquisition charge of $75.00 for services performed in processing this Contract if it is paid in full within 6 months after the Contract's effective date. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, or as otherwise provided by law.

**Returned Payment Charge.** If you make any payment required by this Contract that is not honored, you agree to pay a service charge that is the greater of 5% of the face amount of the instrument, including, in order, payment, debit card orders, or electronic funds transfers, of $25.00 if the face value of the instrument does not exceed $50.00; $30.00 if the face value exceeds $50.00 but does not exceed $300.00; $40.00 if the face value exceeds $300.00.

**Governing Law and Interpretation.** This Contract is governed by the law of Florida and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Default.** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):

◆ You fail to perform any obligation that you have undertaken in this Contract.
◆ We, in good faith, believe that you cannot, or will not, pay or perform the obligations you have agreed to in this Contract.

The original document is owned by Westlake Services, LLC d.b.a. Westlake Financial Services and is held by it, as Custodian, on behalf of Wells Fargo Bank, National Association, as Agent and Secured Party. This copy was created on Nov 29, 2022 12:28:41 PM.

Copy of the Electronic Original® document managed by the eCore® OnDemand (EOD™) Service.

If you default, you agree to pay our court costs and fees for repossession, repair, storage and sale of the Property securing this Contract. You also agree to pay reasonable attorneys' fees after default and referral to an attorney not a salaried employee of ours.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

**Remedies.** If you are in default on this Contract, we have all of the remedies provided by law and this Contract. Those remedies include:

◆ We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.

◆ We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. You will repay us that amount immediately. That amount will earn finance charges from the date we pay it at the post-maturity rate described in the *Payment* section until paid in full.

◆ We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.

◆ We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.

◆ We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward what you owe us.

◆ Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, in our records, at least 10 days before the date of the intended sale or transfer (or within the period of time as is required by law].

You agree that we may take possession of personal property left in the Property or securing this Contract and taken into possession as provided above. You may have a right to recover that property.

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

**Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

◆ You must pay this Contract even if someone else has also signed it.

◆ We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.

◆ We may release any security and you will still be obligated to pay this Contract.

◆ If we give up any of our rights, it will not affect your duty to pay this Contract.

◆ If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**Warranty.** Warranty information is provided to you separately.

Copy of Original

## Security Agreement

**Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:

◆ You will defend our interests in the Property against claims made by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.

◆ You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.

◆ You agree not to remove the Property from the U.S. without our prior written consent.

◆ You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.

◆ You will pay all taxes and assessments on the Property as they become due.

◆ You will notify us with reasonable promptness of any loss or damage to the Property.

◆ You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the *Insurance Disclosures* section, or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You may purchase or provide the insurance from any insurance provider that is reasonably acceptable to us. Your choice of an insurance provider will not affect the credit decision. We may impose reasonable requirements concerning the extent of coverage and the financial soundness of the insurance provider. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as loss payee, we may obtain insurance to protect our interest in the Property. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn finance charges from the date paid at the rate described in the *Payment* section until paid in full.

**Gap Waiver or Gap Coverage.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing a Gap Waiver or Gap Coverage to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Coverage agreement.

## Arbitration Provision

PLEASE READ CAREFULLY. By agreeing to this Arbitration Provision you are giving up your right to go to court for claims or disputes arising from this Contract:

◆ EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN YOU AND US DECIDED BY ARBITRATION, AND NOT BY A COURT OR BY JURY TRIAL.

◆ YOU GIVE UP ANY RIGHT THAT YOU MAY HAVE TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER IN ANY CLASS ACTION OR CLASS ARBITRATION IF ANY CLAIM OR DISPUTE IS ARBITRATED.

◆ IF ARBITRATION IS CHOSEN, DISCOVERY AND RIGHTS TO APPEAL THE ARBITRATOR'S DECISION ARE MORE LIMITED THAN IN A JUDICIAL PROCEEDING AND OTHER RIGHTS THAT YOU WOULD HAVE IN COURT MAY NOT BE AVAILABLE.

You or we (including any assignee) may elect to resolve any Claim by neutral, binding arbitration and not by a court action. *"Claim"* means any claim, dispute or controversy between you and us or our employees, agents, successors, assigns or affiliates arising from or relating to: 1. the credit application; 2. the purchase of the Property; 3. the condition of the Property; 4. this Contract; 5. any insurance, maintenance, service or other contracts you purchased in connection with this Contract; or 6. any related transaction, occurrence or relationship. This includes any Claim based on common or constitutional law, contract, tort, statute, regulation or other ground. To the extent allowed by law, the validity, scope and interpretation of this Arbitration Provision are to be decided by neutral, binding arbitration.

If either party elects to resolve a Claim through arbitration, you and we agree that no trial by jury or other judicial proceeding will take place. Instead, the Claim will be arbitrated on an individual basis and not on a class or representative basis.

The party electing arbitration may choose either of the following arbitration organizations and its applicable rules, provided it is willing and able to handle the arbitration: American Arbitration Association, 1633 Broadway, Floor 10, New York, NY 10019 (www.adr.org) or JAMS, 1920 Main Street, Suite 300 Irvine, CA 92614 (www.jamsadr.com), or it may choose any other reputable arbitration organization and its rules to conduct the arbitration, subject to the other party's approval. The parties can get a copy of the organization's rules by contacting it or visiting its website. If the chosen arbitration organization's rules conflict with this Arbitration Provision, the terms of this Arbitration Provision will govern the Claim. However, to address a conflict with the selected arbitration organization's rules, the parties may agree to change the terms of this Arbitration Provision by written amendment signed by the parties. If the parties are not able to find or agree upon an arbitration organization that is willing and able to handle the arbitration, then the arbitrator will be selected pursuant to 9 U.S. Code Sections 5 and 6.

The original document is owned by Westlake Services, LLC d.b.a. Westlake Financial Services and is held by it, as Custodian, on behalf of Wells Fargo Bank, National Association, as Agent and Secured Party. This copy was created on Nov 29, 2022 12:28:41 PM.

Copy of the Electronic Original® document managed by the eCore® OnDemand (EOD®) Service.

The arbitration hearing will be conducted in the federal district where you reside unless you and we otherwise agree. Or, if you and we agree, the arbitration hearing can be by telephone or other electronic communication. The arbitration filing fee, arbitrator's compensation and other arbitration costs will be paid in the amounts and by the parties according to the rules of the chosen arbitration organization. Some arbitration organizations' rules require us to pay most or all of these amounts. If the rules of the arbitration organization do not specify how fees must be allocated, we will pay the filing fee, arbitrator's compensation, and other arbitration costs up to $5,000, unless the law requires us to pay more. Each party is responsible for the fees of its own attorneys, witnesses, and any related costs, if any, that it incurs to prepare and present its Claim or response. In limited circumstances, the arbitrator may have the authority to award payment of certain arbitration costs or fees to a party, but only if the law and arbitration organization rules allow it.

An arbitrator must be a lawyer with at least ten (10) years of experience and familiar with consumer credit law or a retired state or federal court judge. The arbitration will be by a single arbitrator. In making an award, an arbitrator shall follow governing substantive law and any applicable statute of limitations. The arbitrator will decide any dispute regarding the arbitrability of a Claim. An arbitrator has the authority to order specific performance, compensatory damages, punitive damages, and any other relief allowed by applicable law. An arbitrator's authority to make awards is limited to awards to you or us alone. Claims brought by you against us, or by us against you, may not be joined or consolidated in arbitration with claims brought by or against someone other than you, unless agreed to in writing by all parties. No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration.

Any arbitration award shall be in writing, shall include a written reasoned opinion, and will be final and binding subject only to any right to appeal under the Federal Arbitration Act ("FAA"), 9 U.S. Code Sections 1, et seq. Any court having jurisdiction can enforce a final arbitration award. You and we agree that this arbitration provision is governed by the FAA to the exclusion of any different or inconsistent state or local law.

You or we can do the following without giving up the right to require arbitration: (i) pursue remedies in small claims court for Claims within the small claims court's jurisdiction; or (ii) seek judicial provisional remedies. If a party does not exercise the right to require arbitration in connection with any particular Claim, that party still can require arbitration in connection with any other Claim.

This Arbitration Provision survives any (i) termination, payoff, assignment or transfer of this Contract, (ii) any legal proceeding by you or us to collect a debt owed by the other, and (iii) any bankruptcy proceeding in which you or we are the debtor. With but one exception, if any part of this Arbitration Provision is deemed or found to be unenforceable for any reason, the remainder of this Arbitration Provision will remain in full force and effect. The one exception is that if a finding of partial unenforceability would allow arbitration to proceed on a class-wide basis, then this Arbitration Provision will be unenforceable in its entirety.

**PROCESS TO REJECT THIS ARBITRATION PROVISION.** You may reconsider and reject your approval of this Arbitration Provision by mailing written notice to the assignee (identified in the Assignment section) or, if there is no Assignee, then to Seller. The notice must be postmarked within 30 days of the date you signed this Contract. Your notice must state your decision to reject the Arbitration provision in this Contract and include your signature. It must also provide your name, Seller's name, and date of this Contract. Rejecting this Arbitration Provision will NOT affect your other rights under this Contract. We finance and sell the Property to you or assign the terms of the Contract to you such that the Arbitration Provision will not apply.

**CAUTION: It is important that you read this Arbitration Provision thoroughly before you sign this Contract. By signing this Contract, you acknowledge that you read, understand and agree to this Arbitration Provision. If you do not understand this Arbitration Provision, do not sign this Contract; instead ask your lawyer. If you approve this Arbitration Provision, you have an additional 30 days after signing to reconsider and reject your approval, as described above. If you use that process to reject, this Arbitration Provision will not be a part of this Contract, but the rest of this Contract will still be binding and effective.**

### Notices

**Note.** If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following notice does not apply. **NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**If you are buying a used vehicle:** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

**Sí compra un vehículo usado:** La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.

### Third Party Agreement

(This section applies ONLY to a person who will have an ownership interest in the Property but is NOT a Buyer obligated to pay this Contract ("Third Party Owner").)

In this section only, "you" means only the person in this section.

By signing below you agree to give us a security interest in the Property described in the [...] Property secur[...] agree to terms of this Contract except that you are not liable for the payment required. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, release any part of Property without releasing you from this Contract. We may take these steps without [...] or demand on you.

You acknowledge receipt of a completed copy of this Contract.

| N/A | 11/29/2022 |
|---|---|
| By: | Date |
| Signature of Third Party Owner (NOT the [...]) | |

*[This area intentionally left blank.]*

Retail Installment Contract-FL Not for use in transactions secured by a dwelling.
Bankers Systems TM VMP®
Wolters Kluwer Financial Services © 2015

WLK-MVLFAZFL 11/9/2016

Page 5 of 6

The original document is owned by Westlake Services, LLC d.b.a. Westlake Financial Services and is held by it, as Custodian, on behalf of Wells Fargo Bank, National Association, as Agent and Secured Party. This copy was created on Nov 29, 2022 12:28:41 PM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

## Arbitration Provision and Process to Remove

This Contract contains an Arbitration Provision that <u>affects your rights</u>. By signing this Contract, you agree that either of us may request and require the other to resolve disputes or claims through arbitration instead of a lawsuit. The Arbitration Provision includes a process you can follow in the next 30 days if you reconsider and want to reject the Arbitration Provision.

## Acknowledgment for Electronic Signatures

☒  **Electronic Signature Acknowledgment.** You agree that (i) you viewed and read this entire Contract before signing it, (ii) you signed this Contract with one or more electronic signatures, (iii) you intend to enter into this Contract and your electronic signature has the same effect as your written ink signature, (iv) you received a paper copy of this Contract after it was signed, and (v) the authoritative copy of this Contract shall reside in a document management system held by Seller in the ordinary course of business. You understand that Seller may transfer this Contract to another company in the electronic form or as a paper version of the electronic form which would then become the authoritative copy. Seller or that other company may enforce this Contract in the electronic form or as a paper version of that electronic form. You may enforce the paper version of the Contract copy that you received.

## Signature Notices

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.*

## Signatures

**Entire Agreement.** Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

eSigned By:
*Morgan Saccone*
Nov 29, 2022 12:26:37 PM PST

By: Morgan M Saccone                                   11/29/2022
                                                        Date

By: _____                  _____
                                                        Date

By: _____                  _____
                                                        Date

---

**Notice to Buyer.** a. Do not sign this Contract before you read it or if it contains any blank spaces. b. You are entitled to an exact copy of the Contract you sign. Keep it to protect your legal rights.

By signing below, you agree to the terms of this Contract. You received a copy of this Contract and had a chance to read and review it before you signed it.

**Buyer**

eSigned By:
*Morgan Saccone*
Nov 29, 2022 12:26:37 PM PST

By: Morgan M Saccone                                   11/29/2022
                                                        Date

By: _____                  _____
                                                        Date

By: _____                  _____
                                                        Date

**Seller**  Carstrada, Inc

eSigned By:

By: _____                  11/29/2022
Nov 29, 2022 12:24:07 PM PST                            Date

**Assignment.** This Contract and Security Agreement is assigned to Westlake Financial
4751 Wilshire Blvd Ste 100 Los Angeles CA 90010
the Assignee, phone (800) 641-6700 . This assignment is made under the terms of a separate agreement made between the Seller and Assignee.

☐  This Assignment is made with recourse.

Seller  Carstrada, Inc

By: _____                  11/29/2022
Nov 29, 2022 12:24:07 PM PST                            Date

*[This area intentionally left blank.]*

The original document is owned by Westlake Services, LLC d.b.a. Westlake Financial Services and is held by it, as Custodian, on behalf of Wells Fargo Bank, National Association, as Agent and Secured Party. This copy was created on Nov 29, 2022 12:28:41 PM.

# EXHIBIT B



# TEXAS CERTIFICATE OF TITLE

TxDMV

| VEHICLE IDENTIFICATION NUMBER | YEAR MODEL | MAKE OF VEHICLE | BODY STYLE |
|---|---|---|---|
| 3CZRU5H77KM718777 | 2019 | HOND | LL |

TITLE/DOCUMENT NUMBER · DATE TITLE ISSUED

01100344796143915 09/02/2022

| MODEL | MFG CAPACITY IN TONS | WEIGHT | LICENSE NUMBER |
|---|---|---|---|
| HRV | | 2888 | TONLY08 |

PREVIOUS OWNER

KYTCIA J G MORALES DALLAS TX

ODOMETER READING

9549

OWNER

PROGRESSIVE CASUALTY INSURANCE COMPANY
1340 AIRPORT COMMERCE DR #490
AUSTIN, TX 78741

REMARK(S)

ACTUAL MILEAGE

X _____
SIGNATURE OF OWNER OR AGENT MUST BE IN INK

UNLESS OTHERWISE AUTHORIZED BY LAW, IT IS A VIOLATION OF STATE LAW TO SIGN THE NAME OF ANOTHER PERSON ON A CERTIFICATE OF TITLE OR OTHERWISE GIVE FALSE INFORMATION ON A CERTIFICATE OF TITLE.

| DATE OF LIEN | 1ST LIENHOLDER | 1ST LIEN RELEASED |
|---|---|---|
| NONE | | DA |
| | | BY ____ AUTHORIZED AGENT |
| DATE OF LIEN | 2ND LIENHOLDER | 2ND LIEN RELEASED |
| | | DA |
| | | BY ____ AUTHORIZED AGENT |
| DATE OF LIEN | 3RD LIENHOLDER | 3RD LIEN RELEASED |
| | | DA |
| | | BY ____ AUTHORIZED AGENT |

IT IS HEREBY CERTIFIED THAT THE PERSON HEREIN NAMED IS THE OWNER OF THE VEHICLE DESCRIBED ABOVE WHICH IS SUBJECT TO THE ABOVE LIENS.

RIGHTS OF SURVIVORSHIP AGREEMENT
WE, THE MARRIED PERSONS WHOSE SIGNATURES APPEAR HEREIN, HEREBY AGREE THAT THE OWNERSHIP OF THE VEHICLE DESCRIBED ON THIS CERTIFICATE OF TITLE SHALL FROM THIS DAY FORWARD BE HELD JOINTLY, AND IN THE EVENT OF DEATH OF ANY OF THE PERSONS NAMED IN THE AGREEMENT, THE OWNERSHIP OF THE VEHICLE SHALL VEST IN THE SURVIVOR(S).

SIGNATURE _____

SIGNATURE _____

SIGNATURE _____ DATE ____

FORM 30-C REV. 05/2016     DO NOT ACCEPT TITLE SHOWING ERASURE, ALTERATION, OR MUTILATION.

33392636 (718777) Fort Worth North

# EXHIBIT C

SCAN TRANSACTION NUMBER
673078641

**STATE OF FLORIDA**
**DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES**
**DIVISION OF MOTORIST SERVICES**
Neil Kirkman Building - Tallahassee, FL 32399-0500

## MOTOR VEHICLE TITLE REASSIGNMENT SUPPLEMENT

(Instructions on Reverse Side)

This reassignment is supplement to: ☒ Title No. *18668 8706* State of Issue *TX*

☒ Manufacturer's Statement or Certificate of Origin

Is the title electronic? ☐ Yes ☐ No

### VEHICLE DESCRIPTION

| Vehicle Identification Number | Year | Make | Model | Body |
|---|---|---|---|---|
| 3CZRU5H77KM78017 | 2019 | Honda | HRV | SUV |

### REASSIGNMENT INFORMATION

| Name of Seller(s)/Agent (Print) | FL/ID#, DMS ACCT#, FEID# | DEALER/AUCTION LICENSE (If applicable) |
|---|---|---|
| CAPSTONE INC | VL7018917L | |

Street Address *6023 Hollywood Blvd* City *Hollywood* State *FL* Zip *33024*

Selling Price (If Applicable) | Sales Tax Collected (If Applicable) | Sales Tax Reg. No. (If Applicable)

Purchaser and Co-Purchaser's Printed Name(s): *MORGAN M. SACCONE* Date of Sale *11/29/22*

Purchaser's Address *131 S FEDERAL HWY APT 621* City *BOCA RATON* State *FL* Zip *33432*

Co-Purchaser's Address (If applicable) | City | State | Zip

Auction Name (If applicable) | Auction License Number | State of License | Date of Auction

Street Address | City | State | Zip

### ODOMETER DISCLOSURE STATEMENT

WARNING: FEDERAL AND STATE LAW REQUIRE THAT YOU STATE THE ODOMETER MILEAGE IN CONNECTION WITH TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT.

I/WE STATE THAT THIS ☐ 5 OR ☒ 6 DIGIT ODOMETER NOW READS ☐☐☐☐☐☐ XX (NO TENTHS) MILES.

DATE READ *11/29/22* AND I HEREBY CERTIFY THAT TO THE BEST OF MY KNOWLEDGE THE ODOMETER READING:

CAUTION:
READ CAREFULLY
BEFORE YOU
CHECK A BOX

☐ 1. REFLECTS ACTUAL MILEAGE.
☐ 2. IS IN EXCESS OF ITS MECHANICAL LIMITS.
☐ 3. IS NOT THE ACTUAL MILEAGE. WARNING - ODOMETER DISCREPANCY

UNDER PENALTIES OF PERJURY, I DECLARE THAT I HAVE READ THE FOREGOING DOCUMENT AND THAT THE FACTS STATED IN IT ARE TRUE.

Printed Name of seller(s)/Agent *VMI SIGAL* | Seller(s)/Agent Signature

Printed Name of Co-seller (If applicable) | Co-Seller Signature (If applicable)

Purchaser(s) Signature *M Gen* | Co-Purchaser(s) Signature

Purchaser(s) Printed Name First, Full Middle or Maiden, Last *MORGAN SACCONE* | Co-Purchaser(s) Printed Name First, Full Middle or Maiden, Last

NOTICE: ANY ALTERATION OR ERASURE MAY VOID THIS ASSIGNMENT AND ALL ASSIGNMENTS THAT FOLLOW.

ORIGINAL: SUBMIT WITH APPLICATION FOR TITLE | COPY: SELLER/DEALER RETAIN IN FILE

HSMV 82994 (REV. 04/14) S

SCAN TRANSACTION NUMBER
673078642

**WHEN SHOULD THIS FORM BE USED?**

FORM HSMV 82994, MOTOR VEHICLE TITLE REASSIGNMENT SUPPLEMENT, MUST BE USED:

1. with conforming Florida Certificate(s) of Title to make additional dealer reassignments and odometer disclosures when all reassignment and odometer disclosure spaces on the reverse side of the Certificate of Title have been used;

Or

2. with a non-conforming Certificate(s) of Title to make reassignments and odometer disclosures;

Or

3. with conforming MCO, when the MCO is not available at the time of sale;

Or

4. with all out-of-state non-conforming Certificate(s) of Title to make dealer reassignments and odometer disclosures;

Or

5. when ownership is being transferred on an Electronic Certificate(s) of Title.

NOTE: This form should NOT be used when the owner is transferring ownership on a vehicle that does not have an electronic Certificate of Title. If the Certificate of Title is NOT electronic, the "Transfer of Title By Seller" section must be completed by the seller(s)/agent.

**FILING:**

1. The original HSMV 82994 is to be surrendered with the application for title.

2. The copy of the HSMV 82994 is to be retained by the dealer in his/her records for a period of five (5) years. It is recommended that the individual seller(s) retain a copy of this form for their records.

HSMV 82994 (REV. 04/14) S

SCAN TRANSACTION NUMBER
673078643

**FLORIDA DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES**
**APPLICATION FOR CERTIFICATE OF TITLE WITH/WITHOUT REGISTRATION**
SUBMIT THIS FORM TO YOUR LOCAL TAX COLLECTOR OFFICE
www.flhsmv.gov/offices/

CHECK APPLICATION TYPE: ☐ ORIGINAL  ☐ TRANSFER  **VEHICLE TYPE:** ☐ MOTOR VEHICLE ☒ ☐ MOBILE HOME ☐ VESSEL  **OFF-HIGHWAY VEHICLE:** ☐ ATV ☐ ROV ☐ MC

### 1 — OWNER / APPLICANT INFORMATION

| Customer Number | Check this box if you are requesting the certificate of title to be printed. ☐ | Owner | Co-Owner | Unit Number | Fleet Number |
|---|---|---|---|---|---|
| | | Are you a Florida resident? ☒ yes ☐ no | ☐ yes ☒ no | | |
| | | Are you an alien? ☐ yes ☒ no | ☐ yes ☐ no | | |

☐ OR  ☐ AND  NOTE: When joint ownership, please indicate if "or" or "and" is to be shown on title when issued. If neither box is checked, the title will be issued with "and."
If applicable: ☐ Life Estate/Remainder Person  ☐ Tenancy By the Entirety  ☐ With Rights of Survivorship  **Owner's County of Residence**

| Owner's Name As It Appears on Driver License (First, Full Middle/Maiden, & Last Name) | Owner's Email Address | Date of Birth | Sex | FL Driver License or FEID/Suffix # |
|---|---|---|---|---|
| Morgan M Saccone | msaccone39@gmail.com | 6/7/1998 | | |
| Co-Owner/Lessee's Name As It Appears on Driver License (First, Full Middle/Maiden, & Last Name) | Co-Owner/Lessee's Email Address | Date of Birth | Sex | FL Driver License or FEID/Suffix # |

| Owner's Mailing Address (Mandatory unless a member of the Military) | City | State | Zip |
|---|---|---|---|
| 131 S Federal Hwy Apt 621 | Boca Raton | FL | 33432 |
| Co-Owner's/Lessee's Mailing Address (Mandatory unless a member of the Military) | City | State | Zip |

| Owner's/Lessee's Physical Street Address In Florida (Mandatory unless a member of the Military) | City | State | Zip |
|---|---|---|---|
| 131 S Federal Hwy Apt 621 | Boca Raton | FL | 33432 |
| Mobile Home Physical Address (if applicable) Check if in a mobile home rental park with 10 or more lots. ☐ | | | |

| Mail To Customer Name (if different From Above Owner) | Mail To Customer's Email Address | Date of Birth | Sex | FL Driver License or FEID/Suffix # |
|---|---|---|---|---|
| Mail To Customer Address (if different From Above Mailing Address) | City | | State | Zip |

### 2 — MOTOR VEHICLE, MOBILE HOME OR VESSEL DESCRIPTION

| Vehicle/Vessel Identification Number | Make/Manufacturer | Year | Body | Color | Florida Title Number |
|---|---|---|---|---|---|
| 3CZRU5H77KM718777 | Honda | 2019 | SUV | | |
| Previous State of Issue | License Plate or Vessel Registration Number | Weight 2974 | Length FL.   In. | BHP/CC | GVW/LOC | VAN USE, IF APPLICABLE ☐ PASSENGER ☐ OTHER |

**TYPE** ☐ Open Motorboat ☐ Cabin Motorboat ☐ Auxiliary Sailboat ☐ Inflatable ☐ Houseboat ☐ Pontoon ☐ Airboat ☐ Sailboat ☐ Personal Watercraft ☐ Canoe ☐ Other ___ Specify
**HULL MATERIAL** ☐ Wood ☐ Fiberglass ☐ Wood/Fiberglass ☐ Aluminum ☐ Steel ☐ Other ___ Specify
**PROPULSION** ☐ Outboard ☐ Inboard ☐ Inboard/Outboard ☐ Other ___ ☐ Sail ☐ Air Propelled Specify
**FUEL** ☐ Gas ☐ Diesel ☐ Electric ☐ Other ___ Specify
**DRAFT OF VESSEL** (The depth of water a vessel draws) FT.___ IN.___ *For all vessels 26' or more in length and all sailboats

**USE OF VESSEL** ☐ Recreational (Pleasure) ☐ Dealer/Manuf. ☐ Exempt ☐ Commercial Blue Crab ☐ Commercial Fish ☐ Hire (Livery) ☐ Commercial Stone Crab ☐ Commercial Live Bait ☐ Commercial Mackerel ☐ Commercial Stone Crab ☐ Commercial Shrimp Rec/p. ☐ Commercial Shrimp Non-Rec/p. ☐ Government ☐ Commercial Charter ☐ Commercial Oyster ☐ Commercial Sponge ☐ Commercial Other ☐ Commercial Spiny Lobster  **PREVIOUS OUT-OF-STATE REGISTRATION NUMBER:**

Previously Federally Documented Vessel, Attach Copy of:  ☐ U.S. Coast Guard Release From Documentation Form; or  ☐ Copy of Cancelled Documentation Papers  State of Principal Use

### 3 — BRANDS, USAGE AND TYPE (Check Applicable Boxes)

☐ SHORT TERM LEASE ☐ ASSEMBLED FROM PARTS ☐ LONG TERM LEASE ☐ BONDED TITLE ☐ REBUILT ☐ KIT CAR ☐ POLICE VEHICLE ☐ GLIDER KIT ☐ PRIVATE USE ☐ MANUF. BUY BACK ☐ TAXI CAB ☐ REPLICA ☐ FLOOD ☐ AUTONOMOUS ☐ ILEV ☐ ELECTRIC ☐ CUSTOM ☐ STREET ROD

### 4 — LIENHOLDER INFORMATION

| CHECK IF ELT CUSTOMER ☒ | FEID # 0201803682 | ☐ DL # and Sex and Date of Birth | ☐ DMV Account # | Date of Lien 11/29/2022 | Lienholder's Name Westlake Financial |
|---|---|---|---|---|---|
| Lienholder's Email Address DUGGANAUTO@YAHOO.COM | | Lienholder's Address PO Box 997592 | | City Sacramento | State CA | Zip 95899-7592 |

☐ If Lienholder authorizes the Department to send the motor vehicle or mobile home title to the owner, check box and countersign: ___ (Does not apply to vessels). If box is not checked, title will be mailed to the first lienholder.   (Signature of Lienholder's Representative)

### 5 — TRANSFER TYPE

IF OWNERSHIP HAS TRANSFERRED, HOW AND UNDER WHAT WAS THE VEHICLE, MOBILE HOME, OR VESSEL ACQUIRED?
☒ SALE  ☐ GIFT  ☐ REPOSSESSION  ☐ COURT ORDER  ☐ OTHER (SPECIFY) ___  DATE ACQUIRED  11 / 29 / 2022

### 6 — ODOMETER DECLARATION

WARNING: Federal and State law requires that you state the mileage in connection with an application for a Certificate of Title. Failure to complete or providing a false statement may result in fines or imprisonment.

I/WE STATE THAT THIS ☐ 5 OR ☒ 6 DIGIT ODOMETER NOW READS | 0 | 0 | 9 | 7 | 1 | 2 | .XX (NO TENTHS) MILES, DATE READ 11 / 29 / 2022, AND WE HEREBY CERTIFY THAT TO THE BEST OF MY/OUR KNOWLEDGE THE ODOMETER READING:

☒ 1. REFLECTS ACTUAL MILEAGE.   ☐ 2. IS IN EXCESS OF ITS MECHANICAL LIMITS.   ☐ 3. IS NOT THE ACTUAL MILEAGE.

### 7 — DEALER SALES TAX REPORT AND VEHICLE TRADE IN INFORMATION (IF APPLICABLE)

| FLORIDA SALES TAX REGISTRATION NUMBER | DATE OF SALE | DEALER LICENSE NUMBER | AMOUNT OF TAX | DEALER/AGENT SIGNATURE |
|---|---|---|---|---|
| 16-8013772795-8 | 11/29/2022 | 10189171 | 1055.94 | |
| YEAR OF TRADE IN 2017 | MAKE OF TRADE IN Hyundai | TITLE NUMBER OF TRADE IN (IF KNOWN) | VEHICLE IDENTIFICATION NUMBER OF TRADE IN KMHD35LH9HU372573 | |

HSMV 82040 – REV. 11/15   RULE 15C-21.001, FAC   www.flhsmv.gov

SCAN TRANSACTION NUMBER
673078644

| 8 | MOTOR VEHICLE IDENTIFICATION NUMBER VERIFICATION |
|---|---|

THIS SECTION REQUIRES A PHYSICAL INSPECTION AND A VERIFICATION OF THE VEHICLE IDENTIFICATION NUMBER (VIN) (OR THE MOTOR NUMBER FOR MOTOR VEHICLES MANUFACTURED PRIOR TO 1955) OF THE MOTOR VEHICLE DESCRIBED ON THIS FORM BY A LICENSED DEALER, FLORIDA NOTARY PUBLIC, POLICE OFFICER, OR FLORIDA DIVISION OF MOTOR VEHICLE EMPLOYEE OR TAX COLLECTOR EMPLOYEE. IF THE VIN IS VERIFIED BY AN OUT-OF-STATE MOTOR VEHICLE DEALER, THE VERIFICATION MUST BE COMPLETED ON THEIR LETTERHEAD STATIONERY.  COMPLETE THIS SECTION ON ALL USED MOTOR VEHICLES, INCLUDING TRAILERS, (WITH ABBREVIATION OF "TL" WITH A WEIGHT OF 2,000 POUNDS OR MORE) NOT CURRENTLY TITLED IN FLORIDA.

I, the undersigned, certify that I have physically inspected the above described vehicle and find the vehicle identification number to be: **3CZRU5H77KM718777**

DATE  **11/29/2022**        SIGNATURE _____        (Vehicle Identification Number) PRINTED NAME _____

Law Enforcement Officer or Florida Dealer/Agency Name  **Carstrada, Inc**        Badge # or Florida Dealer # _____        Notary Stamp or Seal

FL DMV/Tax Collector Employee _____        Florida Compliance Examiner/Inspector Badge or ID Number _____

COMMISSIONED NAME OF FLORIDA NOTARY: _____
(Print, Type or Stamp)        NOTARY'S SIGNATURE _____

| 9 | SALES TAX EXEMPTION CERTIFICATION |
|---|---|

THE PURCHASE OF A RECREATIONAL VEHICLE TO BE OFFERED FOR RENT AS LIVING ACCOMMODATIONS DOES NOT QUALIFY FOR EXEMPTION. I HEREBY CERTIFY THE RECREATIONAL VEHICLE, MOBILE HOME OR VESSEL DESCRIBED HAS BEEN PURCHASED AND IS EXEMPT FROM THE SALES TAX IMPOSED BY CHAPTER 212, FLORIDA STATUTES, BY:

☐ PURCHASER (STATE AGENCIES, COUNTIES, ETC.) HOLDS VALID EXEMPTION CERTIFICATE        CONSUMER'S CERTIFICATE OF EXEMPTION NUMBER _____

☐ MOTOR VEHICLE   ☐ MOBILE HOME   ☐ VESSEL WILL BE USED EXCLUSIVELY FOR RENTAL. _____

SALES TAX REGISTRATION NUMBER _____
I hereby certify that ownership of the motor vehicle, mobile home or vessel described on this application, is not subject to Florida Sales and Use Tax for the following reason:   ☐ INHERITANCE   ☐ GIFT

☐ DIVORCE DECREE   ☐ TRANSFER BETWEEN A MARRIED COUPLE   ☐ EVEN TRADE OR TRADE DOWN   (State the facts of the even trade or trade down and the transferor information, including the transferor's name and address, below under "Other: Explain.")

☐ OTHER: (EXPLAIN) _____

| 10 | REPOSSESSION DECLARATION |
|---|---|

IF CHECKED, THE FOLLOWING CERTIFICATIONS ARE MADE BY THE APPLICANT:

☐ I CERTIFY THAT THIS MOTOR VEHICLE, MOBILE HOME OR VESSEL WAS REPOSSESSED UPON DEFAULT IN THE TERMS OF THE LIEN INSTRUMENT AND IS NOW IN MY POSSESSION.

☐ (VESSEL) A PHOTOCOPY OF THE LIEN INSTRUMENT FOR THE VESSEL IS REQUIRED AND ATTACHED.

☐ I AM REQUESTING THAT AN ORIGINAL CERTIFICATE OF REPOSSESSION BE ISSUED FOR THE MOTOR VEHICLE OR MOBILE HOME IN LIEU OF A TITLE (REPOSSESSION).

☐ I AM REQUESTING THAT A DUPLICATE CERTIFICATE OF REPOSSESSION BE ISSUED FOR THE MOTOR VEHICLE OR MOBILE HOME, AS THE ORIGINAL HAS BEEN LOST OR DESTROYED.

| 11 | NON-USE AND OTHER CERTIFICATIONS |
|---|---|

IF CHECKED, THE FOLLOWING CERTIFICATIONS ARE MADE BY THE APPLICANT:

☐ I CERTIFY THAT THE CERTIFICATE OF TITLE IS LOST OR DESTROYED.

☐ THE VEHICLE IDENTIFIED WILL NOT BE OPERATED ON THE STREETS AND HIGHWAYS OF THIS STATE UNTIL PROPERLY REGISTERED.

☐ THE VESSEL IDENTIFIED WILL NOT BE OPERATED ON THE WATERS OF THIS STATE UNTIL PROPERLY REGISTERED.

☐ OTHER: (EXPLAIN) _____

| 12 | APPLICATION ATTESTATION AND SIGNATURES |
|---|---|

I/WE PHYSICALLY INSPECTED THE ODOMETER/VIN AND FURTHER AGREE TO DEFEND THE TITLE AGAINST ALL CLAIMS.  (More than one form HSMV 82040 may be used for additional signatures.)
UNDER PENALTIES OF PERJURY, I DECLARE THAT I HAVE READ THE FOREGOING DOCUMENT AND THAT THE FACTS STATED IN IT ARE TRUE.

SIGNATURE OF APPLICANT (OWNER) _____   Date  **11/29/2022**        SIGNATURE OF APPLICANT (CO-OWNER) _____   Date _____

| 13 | RELEASE OF SPOUSE OR HEIRS INTEREST |
|---|---|

The undersigned person(s) state(s) as follows: That _____ died on _____
(Name of Deceased)        (Date)

☐ testate (with a will)   ☐ Intestate (without a will) and left the surviving heir(s) named below.

☐ When applicable, the heir(s) (named below) certifies that the certificate of title is lost or destroyed.

UNDER PENALTIES OF PERJURY, I DECLARE THAT I HAVE READ THE FOREGOING DOCUMENT AND THAT THE FACTS STATED IN IT ARE TRUE.
(More than one form HSMV 82040 may be used for additional signatures.)

Print or Type Name of Spouse, Co-owner or Heir(s) _____        Signature of Spouse, Co-Owner or Heir(s) _____

That at the time of death the decedent was owner of the motor vehicle, mobile home or vessel described in section 2 of this form.  The person(s) signing above hereby releases all of his/her/their right, title, interest and claim as heir(s) at law, legatee(s), devisee(s), or otherwise to the aforesaid motor vehicle, mobile home or vessel to:

Name of Applicant(s) (Print or Type) _____

RESIDENTS OF FLORIDA AND ALL VESSEL OWNERS, RESIDING IN FLORIDA OR OUT OF STATE, SHOULD SUBMIT THIS FORM AND ALL REQUIRED DOCUMENTATION TO A LOCAL FLORIDA TAX COLLECTOR'S OFFICE OR THE FLORIDA TAX COLLECTOR'S OFFICE LOCATED IN THE APPLICANT'S COUNTY OF RESIDENCE FOR PROCESSING.
Check your local phone book government pages or visit the following website for current mailing addresses: http://www.flhsmv.gov/offices/
www.flhsmv.gov

HSMV 82040 – REV. 11/15        RULE 15C-21.001, FAC



P: 954.321.0507
F: 954.697.0357
W: www.sueyourdealer.com
E: josh@sueyourdealer.com

**CARSTRADA, INC.**
6023 Hollywood Boulevard
Hollywood, FL 33024
**VIA USPS PRIORITY MAIL: 9405503699300492248040**

February 27, 2023

*Re:*  Consumer:  **MORGAN M. SACCONE**
Vehicle:   2019 Honda HR-V
VIN:       3CZRU5H77KM718777

To Whom It May Concern:

As you are aware, this Firm has been retained by MORGAN M. SACCONE for damages against CARSTRADA, INC. for claims arising from the sale of the above-described vehicle as reflected in comprehensive detail in the accompanying demand letters. Accordingly, you are hereby commanded to implement a litigation hold and preserve any and all relevant evidence as further detailed below.

**1.  DEMAND FOR INSURANCE.**
It is our understanding that CARSTRADA, INC. has insurance policies that may provide coverage for the conduct as set forth in the demand letters delivered to you in this matter.

Pursuant to Section 627.4137, Fla. Stat., we are formally requesting a statement, under oath, by a corporate officer or claims manager of your insurance company setting forth the following information with regard to each known policy of insurance, including excess or umbrella insurance, within thirty (30) days of the date of this letter:

1. the name of the insurer;
2. the name of each insured;
3. the limits of liability coverage;
4. a statement of any policy or coverage defense which such insurer reasonably believes is available to such insurer at the time of filing such statement;
5. a copy of the policy;
6. a copy of any recorded statement made by our client.

**2.  FORMAL NOTICE TO PRESERVE EVIDENCE.**

In addition to the above, please be advised that very strict penalties exist for destroying or discarding material evidence. Your failure to preserve these materials may be used



P: 954.321.0507
F: 954.697.0357
W: www.sueyourdealer.com
E: josh@sueyourdealer.com

against you if this matter results in formal legal action. Therefore, kindly notify the appropriate persons to preserve any and all drafts as well as final versions of evidence contained in any medium, such as hard drives, floppy disks, CD/DVD-ROM, USB Drives or any other format, including the personal laptops or home computers of the involved employees.

You should anticipate that much of the information subject to disclosure or responses to discovery in this matter is stored on your current and former computer systems and other media and devices (including personal digital assistants, voice-messaging systems, online repositories and cell phones).

Electronically stored information ("ESI") should be afforded the broadest possible definition and includes potentially relevant information electronically, magnetically or optically stored. ESI resides not only in areas of electronic, magnetic and optical storage media reasonably accessible to you, but also in areas you may deem not reasonably accessible. You are obliged to preserve potentially relevant evidence from both the sources of ESI, even if you do not anticipate producing such ESI.

**YOU ARE DIRECTED TO IMMEDIATELY INITIATE A LITIGATION HOLD FOR POTENTIALLY RELEVANT ESI, DOCUMENTS AND TANGIBLE THINGS, AND TO ACT DILIGENTLY AND IN GOOD FAITH TO SECURE AN AUDIT COMPLIANCE WITH SUCH LITIGATION HOLD. YOU ARE FURTHER DIRECTED TO IMMEDIATELY IDENTIFY AND MODIFY OR SUSPEND FEATURES OF YOUR INFORMATION SYSTEMS AND DEVICES THAT, IN ROUTINE OPERATION, OPERATE TO CAUSE THE LOSS OF POTENTIALLY RELEVANT ESI.**

The demand that you preserve both accessible and inaccessible ESI is reasonable and necessary. Pursuant to the Federal Rules of Civil Procedure, you must identify all sources of ESI you decline to produce and demonstrate to the court why such sources are not reasonably accessible. For good cause shown, the court may then order production of the ESI, even if it finds that it is not reasonably accessible. Accordingly, even ESI that you deem reasonably inaccessible must be preserved in the interim so as not to deprive the plaintiff of her right to secure the evidence or the court of its right to adjudicate the issue. You should anticipate that your employees, officers or others may seek to hide, destroy or alter ESI and act to prevent or guard against such actions. Especially where company machines have been used for Internet access or personal communications, you should anticipate that users may seek to delete or destroy information they regard as personal, confidential or embarrassing and, in doing so, may also delete or destroy potentially relevant ESI. This concern is not one unique to you or your employees and officers. It's simply an event that occurs with such regularity in electronic discovery efforts that any custodian of ESI and their counsel are obliged to anticipate and guard against its occurrence.



P: 954.321.0507
F: 954.697.0357
W: www.sueyourdealer.com
E: josh@sueyourdealer.com

You should further anticipate the need to disclose and produce system and application metadata and act to preserve it. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and also includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access. Application metadata is information automatically included or embedded in electronic files but which may not be apparent to a user, including deleted content, draft language, commentary, collaboration and distribution data and dates of creation and printing. Be advised that metadata may be overwritten or corrupted by careless handling or improper steps to preserve ESI. For electronic mail, metadata includes all header routing data and encoded attachment data, in addition to the to, from, subject, receive date, cc and bcc fields.Your preservation obligation extends beyond ESI in your care, possession or custody and includes ESI in the custody of others that is subject to your direction or control. Accordingly, you must notify any current or former agent, attorney, employee, custodian or contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of your obligation to do so, and you must take reasonable steps to secure their compliance.

Please confirm within 5 business days of receipt of this correspondence that you have taken the steps outlined in this letter to preserve ESI and tangible documents potentially relevant to this matter. If you have not undertaken the steps outlined above, or have taken other actions, please describe what you have done to preserve potentially relevant evidence. Thank you for you anticipated cooperation in this matter and I look forward to hearing from you soon.

Sincerely,

**Joshua Feygin, Esq.**
1930 Harrison Street Suite 208F
Hollywood, FL 33020
T. 954-228-5674
F. 954-697-0357
E. Josh@sueyourdealer.com
www.sueyourdealer.com

Cc:

**MORGAN M. SACCONE**
131 S Federal Highway, Apt 621
Boca Raton, FL 33432

Page **3** of **3**



sue your
dealer
A LAW FIRM

P: 954.321.0507
F: 954.697.0357
W: www.sueyourdealer.com
E: josh@sueyourdealer.com

**CARSTRADA, INC.**
6023 Hollywood Boulevard
Hollywood, FL 33024
**VIA USPS PRIORITY MAIL: 9405503699300492248040**

February 27, 2023

*Re*:          Consumer:   **MORGAN M. SACCONE**
               Vehicle:     2019 Honda HR-V
               VIN:          3CZRU5H77KM718777

### NOTICE OF REVOCATION OF ACCEPTANCE
#### U.C.C. § 2-608 and Fla. Stat. § 672.608

To Whom It May Concern:

As you are aware, this Firm represents MORGAN M. SACCONE (hereinafter the "**Plaintiff**") regarding claims against the above referenced entities, arising under the Uniform Commercial Code ("**U.C.C.**") § 2-608 and Fla. Stat. § 672.608 from the purchase of the above referenced vehicle ("Vehicle").

On or about November 29, 2022, Plaintiff purchased the Vehicle from Dealer and executed a Retail Installment Sales Contract ("**RISC**"). *See* Exhibit A. Plaintiff paid all necessary down-payment amounts required under the RISC and otherwise complied with all relevant terms.

During the course of the negotiations for the Vehicle, Plaintiff was induced by the Dealer to purchase the Vehicle by their express representations that the Vehicle was in excellent mechanical condition and was not involved in any prior accidents. At no point in time did Dealer affirmatively represent that the Vehicle was previously declared a total loss and had sustained significant subskin and frame damage.

Since purchasing the Vehicle, the Plaintiff has discovered that the same has sustained undisclosed prior damage which was known to or should have been known by the Dealership. In addition, the Vehicle was previously declared a total loss. Both of the above substantial non-conformities were not readily apparent to the Plaintiff at the time she accepted the Vehicle.



P: 954.321.0507
F: 954.697.0357
W: www.sueyourdealer.com
E: josh@sueyourdealer.com

In light of the above, please accept this Notice of the Plaintiff's formal revocation of acceptance of the Vehicle pursuant to U.C.C. § 2-608 and Fla. Stat. § 672.608.

Please advise of a suitable date and time that the Plaintiff may return the Vehicle to your possession. Note that should we not receive a response within fifteen (15) days of receipt of this Notice, we shall presume that you have refused to send instructions as to the disposition of the Vehicle and the Plaintiff shall proceed to dispose of same.

Sincerely,

**Joshua Feygin, Esq.**
1930 Harrison Street Suite 208F
Hollywood, FL 33020
T. 954.228.5674
F. 954-697-0357
E. Josh@sueyourdealer.com
www.sueyourdealer.com

C/c:

    **MORGAN M. SACCONE**
    131 S Federal Highway, Apt 621
    Boca Raton, FL 33432

# EXHIBIT A

About   Printing Requirements   Reset   On Demand EOD Service.

**FL-103-ARB 10/10/2015**

# Retail Installment Contract and Security Agreement

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | Summary |
|---|---|---|
| Carstrada, Inc<br>6023 Hollywood Blvd<br>Hollywood, FL 33024 | Morgan M Saccone<br>131 S Federal Hgwy Apt 621<br>Boca Raton, FL 33432 | No.  App# 77318363 - V# 2<br>Date  11/29/2022 |

Buyers' Month of Birth  June

☐ Business, commercial or agricultural purpose Contract.

**Documentary Stamp Tax.** Florida documentary stamp tax required by law in the amount of $ _____ 52.50 _____ has been paid or will be paid directly to the Florida Department of Revenue. Certificate of Registration No. _____ .

## Truth-In-Lending Disclosure

| **Annual Percentage Rate**<br>The cost of your credit as a yearly rate. | **Finance Charge**<br>The dollar amount the credit will cost you. | **Amount Financed**<br>The amount of credit provided to you or on your behalf. | **Total of Payments**<br>The amount you will have paid when you have made all scheduled payments. | **Total Sale Price**<br>The total cost of your purchase on credit, including your down payment of $ 8000.00 |
|---|---|---|---|---|
| 8.99 % | $ 4502.72 | $ | $ 1940 | $ 27460.16 |

**Payment Schedule.** Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 72 | $  270.28 | Monthly, Beginning 01/...23 |
|  | $ |  |

**Security.** You are giving us a security interest in the Property purchased.

**Late Charge.** If all or any portion of a payment is not paid within 10 days of its due date, you will be charged a late charge of 5% of the unpaid amount of the payment due.

**Prepayment.** If you pay off this Contract e... ...t have to pay a pen...

**Contract Provisions.** You can see the ...ms of this Co...ct for ...additional informatio... about nonp... default, any requir... repayment... fore the scheduled date, and prepayment refunds and penalties.

## Description of Property

| Year | Make | Model | | | Odometer Mileage |
|---|---|---|---|---|---|
| 2019 | Honda | HR-V | ...V | 3CZRU5H77KM718777 | 9712 |

☐ New
☒ Used
☐ Demo

Other:

## Description of Trade-In

2017 Hyundai Elantra GT KMHD35LH9HU372573

## Conditional Delivery

☐ **Conditional Delivery.** If checked, you agree that the following agreement regarding securing financing ("*Agreement*") applies: _____ . The Agreement is part of this Contract. The Agreement will no longer control after the assignment is accepted. If there are any conflicts between the terms of the Agreement and the Contract, the terms of this Contract will apply.

## Sales Agreement

**Payment.** You promise to pay us the principal amount of $ 14957.44 plus finance charges accruing on the unpaid balance at the rate of 8.99 % per year from the date of this Contract until paid in full. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the *Truth-In-Lending Disclosure*. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

**Down Payment.** You also agree to pay or apply to the Cash Price, on or before the date of this Contract, any cash, rebate and net trade-in value described in the *Itemization of Amount Financed*.

☐ You agree to make deferred down payments as set forth in your Payment Schedule.

Retail Installment Contract-FL Not for use in transactions secured by a dwelling.
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2015

WLK-MVLFAZFL 11/9/2016
_____ MS _____   Page 1 of 6

The original document is owned by Westlake Services, LLC d.b.a. Westlake Financial Services and is held by it, as Custodian, on behalf of Wells Fargo Bank, National Association, as Agent and Secured Party. This copy was created on Nov 29, 2022 12:28:41 PM.

Copy of the Electronic Originale document managed by the eCore® On Demand (EOD™) Service.

☐ **Loan Processing Fee.** You agree to pay a loan processing fee of
$ _N/A_____ that will be ☐ paid in cash.
☐ financed over the term of the Contract.

☒ **Pre-delivery Service Fee.** You agree to pay a pre-delivery service fee of
$ _999.00_____ that will be ☐ paid in cash.
☐ financed over the term of the Contract. This charge represents costs and profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the sale.

☐ **Minimum Finance Charge.** You agree to pay a minimum finance charge of
$ _N/A_____ if you pay this Contract in full before we have earned that much in finance charges.

### Itemization of Amount Financed

| | | | |
|---|---|---|---|
| a. | Price of Vehicle, etc. (incl. sales tax of | | |
| | $ 1055.94 ) | $ | 21655.94 |
| b. | Pre-delivery service fee | $ | 999.00 |
| c. | **Cash Price** (a+b) | $ | 22654.94 |
| d. | Trade-in allowance | $ | 4000.00 |
| e. | Less: Amount owing, paid to (includes m): | | |
| | | | N/A |
| f. | Net trade-in (d-e; if negative, enter $0 here and enter the amount on line m) | | |
| g. | Cash payment | $ | 4000.00 |
| h. | Manufacturer's rebate | $ | N/A |
| i. | Deferred down payment | | |
| j. | Other down payment (describe) | | |
| | | $ | N/A |
| k. | **Down Payment** (f+g+h+i+j) | $ | 8000.00 |
| l. | **Unpaid balance of Cash Price** (c-k) | $ | 14654.94 |
| m. | Financed trade-in balance (see line f) | $ | N/A |
| n. | Paid to public officials, including filing fees | $ | 250.00 |
| o. | Insurance premiums paid to insurance company(ies) (See *Insurance Disclosures* section for coverage and benefits types.) | | |
| p. | Service Contract, paid to: | | |
| q. | To: Documentary Stamp Tax | $ | 52.50 |
| r. | To: _____ | $ | N/A |
| s. | To: _____ | $ | N/A |
| t. | To: _____ | $ | N/A |
| u. | To: _____ | $ | N/A |
| v. | To: _____ | $ | N/A |
| w. | To: _____ | $ | N/A |
| x. | To: _____ | $ | N/A |
| y. | To: _____ | $ | N/A |
| z. | To: _____ | $ | N/A |
| aa. | **Total Other Charges/Amts Paid** (m thru z) | $ | 302.50 |
| bb. | **Prepaid Finance Charge** | $ | N/A |
| cc. | **Amount Financed** (l+aa-bb) | $ | 14957.44 |

We may retain or receive a portion of any amounts paid to others.

### Insurance Disclosures

**Credit Insurance.** Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below **only** the coverages you have chosen to purchase.

**Credit Life**
☐ Single   ☐ Joint   ☒ None
Premium $ _N/A____ Term _____
Insured _____

**Credit Disability**
☐ Single   ☐ Joint   ☒ None
Premium $ _N/A____ Term _____
Insured _____

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

N/A
By: _____ DOB _____

By: _____ DOB _____

N/A
By: _____ DOB _____

**Property Insurance.** You must insure the Property. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. The collision coverage deductible may not exceed $ _1000.00___ . If you get insurance from or through us you will pay $ _____ for _0 months_____ of coverage.

| | | | |
|---|---|---|---|
| | | $ | N/A |
| | | Deductible Collision Cov. | $ | N/A |
| | | Comprehensive | $ | INCL. |
| | Fire-Theft and Combined Additional Cov. | $ | N/A |
| | | $ | N/A |

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED UNLESS CHECKED AND INDICATED.**

*[This area intentionally left blank.]*

The original document is owned by Westlake Services, LLC d.b.a. Westlake Financial Services and is held by it, as Custodian, on behalf of Wells Fargo Bank, National Association, as Agent and Secured Party. This copy was created on Nov 29, 2022 12:28:41 PM.

Copy of the Electronic Original© document managed by the eCore® eOriginal® (EODS™) service.

☐ **Single-Interest Insurance.** You must purchase single-interest insurance. The coverage may be obtained from a company of your choice, reasonably acceptable to us. If you buy the coverage from or through us, you will pay
$ N/A                    for _____
of coverage. This insurance is solely for the interest of the Seller, its successors and assigns, and no protection exists for your benefit. You authorize us to purchase Single-Interest Insurance.

---

eSigned By:

*Morgan Saccone*

Nov 29, 2022 12:26:37 PM PST          11/29/2022

By: Morgan M Saccone                          Date

---

By: _____                          Date

---

By: _____                          Date

---

## Additional Protections

**You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not factors in the terms of the credit or the related sale of the Vehicle. The voluntary products will not be provided unless you sign and agree to pay the additional cost.**

Your signature below means that you want to purchase, with an additional charge, and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

☐ **Service Contract**
Term _____
Price                    $ N/A
Coverage _____

☐ **Gap Waiver or Gap Coverage**
Term _____
Price                    $ N/A
Coverage _____

☐ _____
Term _____
Price                    $ _____
Coverage _____

---

eSigned By:

*Morgan Saccone*

Nov 29, 2022 12:26:37 PM PST          11/29/2022

By: Morgan M Saccone                          Date

---

By: _____                          Date

---

By: _____                          Date

---

## Additional Terms of the Sales Agreement

**Definitions.** *"Contract"* refers to this Retail Installment Contract and Security Agreement. The pronouns *"you"* and *"your"* refer to each Buyer signing this Contract, and any guarantors, jointly and individually. The pronouns *"we"*, *"us"* and *"our"* refer to the Seller and any entity to which it may transfer this Contract. *"Vehicle"* means each motor vehicle described in the *Description of Property* section. *"Property"* means the Vehicle and all other property described in the *Description of Property* and *Additional Protections* sections.

**Purchase of Property.** You agree to purchase the Property from Seller, subject to the terms and conditions of this Contract. Seller will not make any repairs or additions to the Vehicle except as noted in the *Description of Property* section.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The *"Total Sale Price"* is the total price of the Property if you buy it over time.

**Deferment.** We may agree to defer the scheduled due date of all or any part of any installment payment, and will collect a $15.00 fee for such deferment. You must maintain the insurance on the Property required by this Contract during any deferment period. You may extend any optional insurance you bought with this Contract if the insurance company or your insurance contract allows the extension and if you pay the extension charge. In addition to the $15.00 deferment fee and the costs of extending required or optional insurance, you will also be required to pay additional finance charges as a result of exercising the deferment option.

**General Terms.** The Total Sale Price shown in the *Truth-In-Lending Disclosure* assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you agree not to pay, any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law. If we receive a finance charge or other charge that exceeds the maximum amount, we will first apply the excess amount to reduce the principal balance and, when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

You agree that the Property will not be used as a dwelling.

**Prepayment.** You may prepay this Contract in full or in part at any time. We may impose an acquisition charge of $75.00 for services performed in processing this Contract if it is paid in full within 6 months after the Contract's effective date. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law.

**Returned Payment Charge.** If you make any payment required by this Contract that is dishonored, you agree to pay a service charge that is the greater of 5% of the face amount of the instrument or orders of payment, debit card orders, or electronic funds transfers of $25.00 if the face value of the instrument does not exceed $50.00; $30.00 if the face value exceeds $50.00 but does not exceed $300.00; $40.00 if the face value exceeds $300.00.

**Governing Law and Interpretation.** This Contract is governed by the law of Florida and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Default.** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):

◆ You fail to perform any obligation that you have undertaken in this Contract.
◆ We, in good faith, believe that you cannot, or will not, pay or perform the obligations you have agreed to in this Contract.

---

The original document is owned by Westlake Services, LLC d.b.a. Westlake Financial Services and is held by it, as Custodian, on behalf of Wells Fargo Bank, National Association, as Agent and Secured Party. This copy was created on Nov 29, 2022 12:28:41 PM.

Copy of the Electronic Original® document managed by the eCore® OnDemand (EOD™) Service.

If you default, you agree to pay our court costs and fees for repossession, repair, storage and sale of the Property securing this Contract. You also agree to pay reasonable attorneys' fees after default and referral to an attorney not a salaried employee of ours.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

**Remedies.** If you are in default on this Contract, we have all of the remedies provided by law and this Contract. Those remedies include:

- ◆ We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.
- ◆ We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. You will repay us that amount immediately. That amount will earn finance charges from the date we pay it at the post-maturity rate described in the *Payment* section until paid in full.
- ◆ We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
- ◆ We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.
- ◆ We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward what you owe us.
- ◆ Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, according to our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that we may take possession of personal property left in the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

**Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

- ◆ You must pay this Contract even if someone else has also signed it.
- ◆ We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
- ◆ We may release any security and you will still be obligated to pay this Contract.
- ◆ If we give up any of our rights, it will not affect your duty to pay this Contract.
- ◆ If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**Warranty.** Warranty information is provided to you separately.

## Security Agreement

**Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:

- ◆ You will defend our interests in the Property against claims made by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
- ◆ You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.
- ◆ You agree not to remove the Property from the U.S. without our prior written consent.
- ◆ You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.
- ◆ You will pay all taxes and assessments on the Property as they become due.
- ◆ You will notify us with reasonable promptness of any loss or damage to the Property.

- ◆ You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the *Insurance Disclosures* section, or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You may purchase or provide the insurance from any insurance provider that is reasonably acceptable to us. Your choice of an insurance provider will not affect the credit decision. We may impose reasonable requirements concerning the extent of coverage and the financial soundness of the insurance provider. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as loss payee, we may obtain insurance to protect our interest in the Property. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn finance charges from the date paid at the rate described in the *Payment* section until paid in full.

**Gap Waiver or Gap Coverage.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing a Gap Waiver or Gap Coverage to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Coverage agreement.

## Arbitration Provision

PLEASE READ CAREFULLY. By agreeing to this Arbitration Provision you are giving up your right to go to court for claims or disputes arising from this Contract:

- ◆ EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN YOU AND US DECIDED BY ARBITRATION, AND NOT BY A COURT OR BY JURY TRIAL.
- ◆ YOU GIVE UP ANY RIGHT THAT YOU MAY HAVE TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER IN ANY CLASS ACTION OR CLASS ARBITRATION IN A COURT OR A DISPUTE ARBITRATED.
- ◆ IN ARBITRATION, DISCOVERY AND RIGHTS TO APPEAL THE ORDER ARE USUALLY MORE LIMITED THAN IN A JUDICIAL PROCEEDING, AND OTHER RIGHTS THAT YOU WOULD HAVE IN COURT MAY NOT BE AVAILABLE.

You or we (including any assignee) may elect to resolve any Claim by neutral, binding arbitration and not by a court action. *"Claim"* means any claim, dispute or controversy between you and us or our employees, agents, successors, assigns or affiliates arising from or relating to: 1. the credit application; 2. the purchase of the Property; 3. the condition of the Property; 4. this Contract; 5. any insurance, maintenance, service or other contracts you purchased in connection with this Contract; or 6. any related transaction, occurrence or relationship. This includes any Claim based on common or constitutional law, contract, tort, statute, regulation or other ground. To the extent allowed by law, the validity, scope and interpretation of this Arbitration Provision are to be decided by neutral, binding arbitration.

If either party elects to resolve a Claim through arbitration, you and we agree that no trial by jury or other judicial proceeding will take place. Instead, the Claim will be arbitrated on an individual basis and not on a class or representative basis.

The party electing arbitration may choose either of the following arbitration organizations and its applicable rules, provided it is willing and able to handle the arbitration: American Arbitration Association, 1633 Broadway, Floor 10, New York, NY 10019 (www.adr.org) or JAMS, 1920 Main Street, Suite 300 Irvine, CA 92614 (www.jamsadr.com), or it may choose any other reputable arbitration organization and its rules to conduct the arbitration, subject to the other party's approval. The parties can get a copy of the organization's rules by contacting it or visiting its website. If the chosen arbitration organization's rules conflict with this Arbitration Provision, the terms of this Arbitration Provision will govern the Claim. However, to address a conflict with the selected arbitration organization's rules, the parties may agree to change the terms of this Arbitration Provision by written amendment signed by the parties. If the parties are not able to find or agree upon an arbitration organization that is willing and able to handle the arbitration, then the arbitrator will be selected pursuant to 9 U.S. Code Sections 5 and 6.

Retail Installment Contract-FL Not for use in transactions secured by a dwelling.
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2015

WLK-MVLFAZFL 11/9/2016

☐ MS

Page 4 of 6

The original document is owned by Westlake Services, LLC d.b.a. Westlake Financial Services and is held by it, as Custodian, on behalf of Wells Fargo Bank, National Association, as Agent and Secured Party. This copy was created on Nov 29, 2022 12:28:41 PM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

The arbitration hearing will be conducted in the federal district where you reside unless you and we otherwise agree. Or, if you and we agree, the arbitration hearing can be by telephone or other electronic communication. The arbitration filing fee, arbitrator's compensation and other arbitration costs will be paid in the amounts and by the parties according to the rules of the chosen arbitration organization. Some arbitration organizations' rules require us to pay most or all of these amounts. If the rules of the arbitration organization do not specify how fees must be allocated, we will pay the filing fee, arbitrator's compensation, and other arbitration costs up to $5,000, unless the law requires us to pay more. Each party is responsible for the fees of its own attorneys, witnesses, and any related costs, if any, that it incurs to prepare and present its Claim or response. In limited circumstances, the arbitrator may have the authority to award payment of certain arbitration costs or fees to a party, but only if the law and arbitration organization rules allow it.

An arbitrator must be a lawyer with at least ten (10) years of experience and familiar with consumer credit law or a retired state or federal court judge. The arbitration will be by a single arbitrator. In making an award, an arbitrator shall follow governing substantive law and any applicable statute of limitations. The arbitrator will decide any dispute regarding the arbitrability of a Claim. An arbitrator has the authority to order specific performance, compensatory damages, punitive damages, and any other relief allowed by applicable law. An arbitrator's authority to make awards is limited to awards to you or us alone. Claims brought by you against us, or by us against you, may not be joined or consolidated in arbitration with claims brought by or against someone other than you, unless agreed to in writing by all parties. No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration.

Any arbitration award shall be in writing, shall include a written reasoned opinion, and will be final and binding subject only to any right to appeal under the Federal Arbitration Act ("FAA"), 9 U.S. Code Sections 1, et seq. Any court having jurisdiction can enforce a final arbitration award. You and we agree that this Arbitration Provision is governed by the FAA to the exclusion of any different or inconsistent state or local law.

You or we can do the following without giving up the right to require arbitration: (a) seek remedies in small claims court for Claims within the small claims court's jurisdiction; (b) seek judicial provisional remedies. If a party does not exercise its right to require arbitration in connection with any particular Claim, that party still can require arbitration in connection with any other Claim.

This Arbitration Provision survives any (i) termination, payoff, assignment or transfer of this Contract, (ii) any legal proceeding by you or us to collect a debt owed by the other, and (iii) any bankruptcy proceeding in which you or we are the debtor. With but one exception, if any part of this Arbitration Provision is deemed or found to be unenforceable for any reason, the remainder of this Arbitration Provision will remain in full force and effect. The one exception is that if a finding of partial unenforceability would allow arbitration to proceed on a class-wide basis, then this Arbitration Provision will be unenforceable in its entirety.

**PROCESS TO REJECT THIS ARBITRATION PROVISION.** You may reconsider and reject your approval of this Arbitration Provision by mailing a written notice to the assignee (identified in the Assignment section) or if none to us Assignee, then to Seller. The notice must be postmarked within 30 days of the date you signed this Contract. Any notice you give us must state your decision to reject the Arbitration provision in this Contract and include your signature. It must also provide your name, Seller's name and the date of this Contract. Rejecting this Arbitration Provision will NOT affect any other remainder of why we finance and sell the Property to you or our other rights of this Contract, except that the Arbitration Provision will not apply.

**CAUTION: It is important that you read this Arbitration Provision thoroughly before you sign this Contract. By signing this Contract, you acknowledge that you read, understand and agree to this Arbitration Provision. If you do not understand this Arbitration Provision, do not sign this Contract; instead ask your lawyer. If you approve this Arbitration Provision, you have an additional 30 days after signing to reconsider and reject your approval, as described above. If you use that process to reject, this Arbitration Provision will not be a part of this Contract, but the rest of this Contract will still be binding and effective.**

## Notices

Note. If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following notice does not apply. **NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Sí compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.

## Third Party Agreement

(This section applies ONLY to a person who will have an ownership interest in the Property but is NOT a Buyer obligated to pay this Contract ("Third Party Owner").)

In this section only, "you" means only the person in this section.

By signing below you agree to give us a security interest in the Property described in the Motor Vehicle Property security section. You agree to all the terms of this Contract except that you are not liable for the payment required by it. Your interest in the Property may be used to satisfy the Buyer's obligations. You agree that we may renew, extend or change this Contract or release any part of the Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

You acknowledge receipt of a completed copy of this Contract.

N/A                                                                      11/29/2022

By: _____            Date

Signature of Third Party Owner (NOT the Buyer)

*[This area intentionally left blank.]*

The original document is owned by Westlake Services, LLC d.b.a. Westlake Financial Services and is held by it, as Custodian, on behalf of Wells Fargo Bank, National Association, as Agent and Secured Party. This copy was created on Nov 29, 2022 12:28:41 PM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

### Arbitration Provision and Process to Remove

**This Contract contains an Arbitration Provision that affects your rights.** By signing this Contract, you agree that either of us may request and require the other to resolve disputes or claims through arbitration instead of a lawsuit. The Arbitration Provision includes a process you can follow in the next 30 days if you reconsider and want to reject the Arbitration Provision.

### Acknowledgment for Electronic Signatures

☒  **Electronic Signature Acknowledgment.** You agree that (i) you viewed and read this entire Contract before signing it, (ii) you signed this Contract with one or more electronic signatures, (iii) you intend to enter into this Contract and your electronic signature has the same effect as your written ink signature, (iv) you received a paper copy of this Contract after it was signed, and (v) the authoritative copy of this Contract shall reside in a document management system held by Seller in the ordinary course of business. You understand that Seller may transfer this Contract to another company in the electronic form or as a paper version of that electronic form which would then become the authoritative copy. Seller or that other company may enforce this Contract in the electronic form or as a paper version of that electronic form. You may enforce the paper version of the Contract copy that you received.

### Signature Notices

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.*

### Signatures

**Entire Agreement.** Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

eSigned By: *Morgan Saccone*
Nov 29, 2022 12:26:37 PM PST                                   11/29/2022

By: Morgan M Saccone                                              Date

By:                                                                          Date

By:

**Notice to Buyer.** a. Do not sign this Contract before you read it or if it contains any blank spaces. b. You are entitled to an exact copy of the Contract you sign. Keep it to protect your legal rights.

By signing below, you agree to the terms of this Contract. You received a copy of this Contract and had a chance to read and review it before you signed it.

**Buyer**

eSigned By: *Morgan Saccone*
Nov 29, 2022 12:26:37 PM PST                                   11/29/2022

By: Morgan M Saccone                                              Date

By:                                                                          Date

By:                                                                          Date

**Seller**   Carstrada, Inc

eSigned By: _____
Nov 29, 2022 12:24:07 PM PST                                   11/29/2022

By:                                                                          Date

**Assignment.** This Contract and Security Agreement is assigned to Westlake Financial
4751 Wilshire Blvd Ste 100 Los Angeles CA 90010
the Assignee, phone (800) 641-6700 . This assignment is made under the terms of a separate agreement made between the Seller and Assignee.
☐  This Assignment is made with recourse.

Seller   Carstrada, Inc

Nov 29, 2022 12:24:07 PM PST                                   11/29/2022

By:                                                                          Date

*[This area intentionally left blank.]*

The original document is owned by Westlake Services, LLC d.b.a. Westlake Financial Services and is held by it, as Custodian, on behalf of Wells Fargo Bank, National Association, as Agent and Secured Party. This copy was created on Nov 29, 2022 12:28:41 PM.



P: 954.321.0507
F: 954.697.0357
W: www.sueyourdealer.com
E: josh@sueyourdealer.com

**CARSTRADA, INC.**
6023 Hollywood Boulevard
Hollywood, FL 33024
**VIA USPS PRIORITY MAIL: <u>9405503699300492248040</u>**

February 27, 2023

*Re*:          Consumer:     **MORGAN M. SACCONE**
               Vehicle:        2019 Honda HR-V
               VIN:            3CZRU5H77KM718777

<u>**DEMAND FOR VIOLATIONS OF THE
MOTOR VEHICLE AND INFORMATION COST SAVINGS ACT**</u>

To Whom It May Concern:

As you are aware, this office represents MORGAN M. SACCONE (hereinafter the "Plaintiff") regarding claims CARSTRADA, INC. located at 6023 Hollywood Boulevard, Hollywood, FL 33024 (hereinafter the "Dealer" or the "Dealership"), arising under the Motor Vehicle and Information Cost Savings Act stemming from the purchase of the above referenced vehicle (hereinafter the "Vehicle").

Congress passed the Motor Vehicle and Information Cost Savings Act to prevent fraud in the sale of motor vehicles. The two main ways in which a person transferring a motor vehicle can violate the Act are (1) tampering with the odometer -- the classic odometer "rollback" -- and (2) failing to obtain the buyer's signature on the title certificate which discloses the odometer reading, in connection with the sale. This basis of the Plaintiff's claims against the Dealership are founded primarily on the Dealership's violation of the Act's disclosure requirements, not on a claim of tampering.

As explicated in the Fla. Stat. 501.98 Demand Letter sent on even date herewith, the Dealership failed to provide the Plaintiff with the actual title certificate, for examination and signature, as required by the Federal Motor Vehicle Information and Cost Savings Act, 49 U.S.C. §32705, and the regulations promulgated thereunder, including 49 C.F.R. §580.5. In this way, the Dealership was able to hide and conceal from the Consumer the fact that it knew who the prior owner of the Vehicle was and that the Vehicle was previously declared a total loss.

Instead of complying with federal and state law, the Dealership had the Plaintiff execute a Motor Vehicle Title Reassignment form along with an Application for Certificate of Title. This tactic was designed to prevent the Plaintiff from inspecting the Vehicle title, so that she would not discover the Vehicle was previously declared a total loss and worth vastly



P: 954.321.0507
F: 954.697.0357
W: www.sueyourdealer.com
E: josh@sueyourdealer.com

less than she had agreed to pay. The Dealership deliberately deceived the Plaintiff through oral and written misrepresentations with the express intent to defraud. As a result of the Dealership's acts, omissions and misrepresentations, the Plaintiff has been damaged.

Pursuant to 49 U.S.C. §32710, a person that violates this chapter or a regulation prescribed or order issued under this chapter, with intent to defraud, is liable for 3 times the actual damages or $10,000.00, whichever is greater.

### **Good-Faith Settlement Demand**

In light of the foregoing, my Client is willing to amicably resolve this matter without the need for protracted litigation and attorney's fees and demands the following:

a. Payment of $10,000.00 in statutory damages arising under 49 U.S.C. §32710; and,
b. Reasonable attorney's fees and costs in an amount to be determined.

In exchange, Plaintiff will release Dealership and its employees, sureties, agents, principles, and insurers from liability for damages under 49 U.S.C. §32710 in connection with the above-described transaction. This offer of resolution is reasonable given your liability in this situation.

We will look forward to hearing from you regarding the Plaintiff's dispute. **Please respond in writing within 30 days from the date of receipt of this letter or else we will be forced to proceed accordingly.**

Sincerely,

**Joshua Feygin, Esq.**
1930 Harrison Street Suite 208F
Hollywood, FL 33020
T. 954-228-5674
F. 954-697-035
E. Josh@sueyourdealer.com
www.sueyourdealer.com

C/c:

      **MORGAN M. SACCONE**
      131 S Federal Highway, Apt 621
      Boca Raton, FL 33432